UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| JAMIE WHITTEMORE, on her own behalf and on behalf of similarly situated others,<br><br>Plaintiff,<br><br>v.<br><br>CIGNA HEALTH AND LIFE INSURANCE COMPANY,<br><br>Defendant. | NO.<br><br>**COMPLAINT**<br><br>**CLASS ACTION**<br>**JURY TRIAL DEMANDED**<br>**INJUNCTIVE RELIEF SOUGHT** |

## INTRODUCTION

1.      This case is about disability discrimination in the provision of healthcare coverage. Specifically, this case is about a health insurance company's categorical exclusion of prescription medication for the treatment of obesity and the resultant discrimination against people with the disability of obesity. This type of discrimination is not new; rather, it follows from a long history of prejudice, exclusion, and stigmatization of people with disabilities in general and of people diagnosed with obesity, in particular. The Affordable Care Act's ("ACA") Section 1557, 42 U.S.C. § 18116, protects individuals with disabilities—including those diagnosed with obesity—from such discrimination in the design and administration of their health coverage. This case seeks to enforce those protections.

2.      Defendant Cigna Health and Life Insurance Company ("Cigna") discriminates on the basis of disability when it designs and/or administers health plans

that exclude all coverage for prescription medications to treat obesity, a medical condition that is also a disability.

3. Specifically, semaglutide 1, marketed under the brand names of Ozempic and Wegovy, tirzepatide, marketed under the brand name Zepbound, and other prescription medications have been shown to be remarkably effective at treating obesity. Their medical efficacy, demonstrated through multiple random-controlled, double-blind studies (considered the "gold standard" for evidence-based medicine), is well-established.

4. Cigna's internal medical policies conclude that these medications are medically necessary to treat obesity. *See, e.g.*, *Ex. 1*, Drug and Biological Coverage Policy: Semaglutide (Wegovy); *Ex. 2*, Cigna Prior Authorization Policy for Saxenda, Wegovy and Zepbound.

5. Despite Cigna's recognition that the medications are medically necessary and effective, it designs and administers health plans that exclude coverage of these medications whenever they are sought to treat obesity (hereinafter, the "Obesity Exclusion"). Cigna does so without any medical or scientific basis and contrary to its own internal medical policies.

6. Cigna's Obesity Exclusion is irrational, arbitrary, and likely more expensive for Cigna and its customers/clients than covering the disputed prescription medications. Indeed, the longer Cigna continues to design and administer the Obesity Exclusion, the more it puts the health and lives of its enrollees diagnosed with obesity at risk for the many symptoms and co-occurring conditions associated with obesity.

7.      Plaintiff Jamie Whittemore is an enrollee in a Cigna-administered health plan who was subjected to disability discrimination by Cigna because she is diagnosed with obesity, a disabling health condition that often requires medically necessary treatment with prescription medications. Specifically, Cigna denied coverage of medically necessary prescription medications prescribed for Ms. Whittemore because the medications were prescribed to treat obesity and therefore excluded under the terms of the health plan that Cigna designed and administered.

8.      Cigna is a "health program or activity" subject to the ACA's anti-discrimination law, known as Section 1557 and found at 42 U.S.C. § 18116.

9.      As an entity subject to Section 1557, Cigna had an independent legal and fiduciary duty to Ms. Whittemore to administer health benefits in a non-discriminatory manner. Based on information and belief, Cigna also has a contractual duty with its customers/clients (in this case, Ms. Whittemore's employer, University of Maine System) to administer health benefits in a non-discriminatory manner.

10.     Cigna breached its duty of non-discrimination when it intentionally designed and administered health plans that discriminate on the basis of disability. Specifically, Cigna has discriminated and continues to discriminate against Ms. Whittemore and other Cigna plan enrollees diagnosed with obesity by denying coverage of the prescription medications that they require based solely on the fact that the medications are required to treat the disability of obesity.

11.     For example, Ms. Whittemore's Cigna health plan contains an exclusion of all "medical and surgical services intended primarily for the treatment or control of

obesity." *Ex. 3* at 60. The exclusion, however, exempts certain treatment for "clinically severe obesity" when treatment is delivered at an approved center "if the services are demonstrated, through existing peer-reviewed guidelines, to be safe and effective for treatment of the condition." *Id.* This exception is directed at covering bariatric surgery for severe obesity, not coverage of medically necessary prescription medications, as is clear from the context. For example, in another portion of the plan, Cigna makes clear that the plan does not cover any product "dispensed" for the purpose of weight loss. *Id.* at 58.

12.     Moreover, the health plan states that all general exclusions "also apply to the benefits for Prescription Drug Products." *Id.* at 58.

13.     Cigna's health plan generally covers prescription medications that appear on the plan's Prescription Drug List. *See id.* at 55, 89.

14.     The Prescription Drug List for Ms. Whittemore's Cigna health plan is the Value 3-Tier Prescription Drug List. The List includes coverage of Wegovy and Zepbound as medically necessary, but only when there is no Obesity Exclusion in the plan. *See Ex. 4*: Rx Drug List at 17.

15.     Based on information and belief, Cigna offers certain of its customers/clients the choice of excluding all coverage for prescription drugs to treat obesity. In other words, Cigna designs certain of the health plans it offers in a manner that permits employers (Cigna's customers/clients) to choose to exclude prescription drug coverage for obesity.

16.     But for the Obesity Exclusion, the medications would have been covered, as they are considered medically necessary by Cigna and included on the Prescription Drug List. *Id.* at 17; *Exs. 1-2.*

17.     As a result of Cigna's Obesity Exclusion, Ms. Whittemore and proposed class members do not have access to the prescription medications that they require to treat their disability and diagnosed health condition of obesity. At the same time, other enrollees have access to prescription medications that are medically necessary to treat their diagnosed health conditions, including the same or similar medications.

18.     This is disability discrimination. Ms. Whittemore, on behalf of similarly situated others, challenges Cigna's Obesity Exclusion as a form of illegal disability discrimination in violation of Section 1557.

19.     Ms. Whittemore and other similarly situated enrollees—all of whom are diagnosed by their treating physicians with obesity and have been prescribed medically necessary prescription medications to treat their obesity—are "qualified individuals with disabilities." *See Cook v. Rhode Is. Dep't of Mental Retardation,* 10 F.3d 17 (1st Cir. 1993); *Mendez v. Brown*, 311 F. Supp. 2d 134, 142 (D. Mass. 2004).

20.     Cigna discriminates on the basis of disability against enrollees with obesity by designing and administering an exclusion of all coverage for medically necessary prescription medications to treat their diagnosed condition of obesity.

21.     Based on information and belief, class members' medical diagnosis of obesity triggers the denial of coverage for the prescription medications they need.

22.     The Obesity Exclusion is grounded in the historic isolation and segregation of people with disabilities, including those with obesity, from the mainstream of American society. *See* 42 U.S.C. § 12101(a)(2)–(3). The Obesity Exclusion at issue here is one of many historical yet ongoing discriminatory barriers that individuals with disabilities continually encounter and that anti-discrimination laws were designed to combat. *See* 42 U.S.C. § 12101(a)(5). Categorical exclusions of a particular treatment were routinely applied when the treatment at issue was overwhelmingly required by individuals with disabilities and not the general population. *See* Blake, Valarie, *Restoring Civil Rights to the Disabled in Health Insurance,* 95 Neb. L. Rev. 1071, 1086 (2017) ("Blake"). Indeed, before the enactment of the ACA, health insurers purposefully and legally eliminated coverage of such treatment in order to avoid covering the needs of people with disabilities. *Id.* That is the case with Cigna's Obesity Exclusion.

23.     Such historic exclusionary practices against individuals with disabilities are based on the misperception that persons with disabilities cannot participate in work, benefit from medical treatment, or fully engage in other aspects of society. For people diagnosed with obesity, historic discrimination often took the form of excluding coverage because their condition was viewed as "voluntary" or a "lack of willpower."

24.     Today, it is widely accepted that obesity is a chronic medical disease, not an attitudinal state that can be addressed with "better choices" or more "willpower." Rather, just like most other chronic medical diseases, obesity is treated with effective medical treatment, including prescription medications and surgery. Despite this, health

entities like Cigna continue to exclude safe, effective and medically necessary treatment for obesity.

25.     Based on information and belief, Cigna failed to reexamine its health plans' historic exclusion of coverage for prescription medications for obesity when the ACA's anti-discrimination laws took effect. Such "thoughtless indifference" or "benign neglect" of the coverage needs of enrollees with disabilities is a form of discriminatory prejudice. *See Payan v. L.A. Cmty. Coll. Dist.,* 11 F.4th 729, 737 (9th Cir. 2021).

26.     Cigna, like other health entities, historically excluded the treatment of various disabilities including developmental disabilities, psychiatric disabilities, hearing loss, and obesity from coverage. They also excluded the treatments specific to those conditions, such as hearing aids for hearing loss, wheelchairs for persons with mobility impairments and here, prescription medications to treat obesity.

27.     In sum, the Obesity Exclusion is a remnant of the historic exclusionary treatment of people with disabilities by Cigna and is illegal discrimination.

## JURISDICTION AND VENUE

28.     This action arises under Section 1557 of the ACA, 42 U.S.C. § 18116.

29.     This Court has original jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 because the matters in controversy arise under the Constitution and laws of the United States.

30.     Declaratory relief is authorized by Rules 57 and 65 of the Federal Rules of Civil Procedure and by 28 U.S.C. §§ 2201 and 2202.

31.     Venue is proper under 28 U.S.C. § 1391(b)(2) because, *inter alia*, a substantial part of the events giving rise to the claim occurred in the Federal District of Maine.

32.     The Court has personal jurisdiction over Cigna because Cigna does business in Maine, including providing health insurance to thousands of Maine residents.

## PARTIES

33.     ***Plaintiff Jamie Whittemore.*** Ms. Whittemore is enrolled in a Cigna-administered health plan through her employment with the University of Maine System. *See Ex. 1.*

34.     ***Defendant Cigna.*** Defendant Cigna Health and Life Insurance Company is a health insurance company and third-party administrator that is headquartered in Connecticut and is engaged in the business of insurance and other business in the state of Maine.

## FACTUAL ALLEGATIONS

### I.     Factual Background About Obesity

#### A.     Obesity Is a Physiological Impairment or Disease Affecting One or More Major Bodily Functions.

35.     Obesity is a chronic disease that impacts one or more body systems, even without any secondary, underlying physical conditions.

36.     In 2013, the American Medical Association ("AMA") passed a landmark policy that recognized "obesity as a disease state with multiple pathophysiological

aspects requiring a range of interventions to advance obesity treatment and prevention." *See* AMA Policy H-440.842.[1]

37.     Dozens of other professional organizations, medical and public health entities, and governmental and non-governmental organizations, including the World Health Organization and National Institutes of Health, similarly recognize that obesity is a physiological disease.

38.     This is consistent with conclusions throughout the medical community regarding the nature and impact of obesity, including opinions of the American Association of Clinical Endocrinologists, the American Academy of Family Physicians, the American College of Cardiology, the American College of Surgeons, the American Society for Reproductive Medicine, the American Urological Association, the Endocrine Society, the Obesity Society, the Society for Cardiovascular Angiography and Interventions, and the Food and Drug Administration. *See* Bray, Kim, Wilding, Obesity: *A Chronic Relapsing Progressive Disease Process, A position statement of the World Obesity Federation* (2017) (hereinafter "Bray").[2]

39.     Obesity involves numerous pathophysiological processes, including changes at the cellular, hormonal, neurochemical, and organ levels. It causes or contributes to altered production of numerous hormones, which have pathologic effects across bodily systems and cause further adverse health effects.

---

[1] https://policysearch.ama-assn.org/policyfinder (last visited 5/23/24).
[2] https://onlinelibrary.wiley.com/doi/10.1111/obr.12551 (last visited 5/23/24).

40.     At a neurochemical level, obesity leads to inflammation within appetite control centers in the hypothalamus, which in turn decreases response to hunger and satiety signaling from other parts of the body. This appetite dysregulation, which leads to elevated hunger and diminished satiety, makes behavioral changes to decrease food intake progressively more challenging for persons who have obesity. This and other biochemical changes likely underlie why sustained weight loss is so difficult to achieve and maintain for people with obesity.

41.     Obesity is not merely a risk factor for disease. Rather, obesity is a disease that can causally contribute to ill health and substantial functional impairment of major life activities, such as an individual's respiratory process and ability to walk or run.

42.     Indeed, obesity has a strong association with the "impairment of health-related quality of life." Djalalinia, Qorbani, Peykari, Kelishadi, *Health impacts of Obesity*, Pak J Med Sci. (2015).[3]

43.     Functional impairments such as osteoarthritis are associated with obesity, as are diabetes, hypertension, cancer, gallstones, and psychological distress from stigmatization. *See supra* Bray; WHO Fact Sheet, *Obesity and Overweight* (March 2024)(hereinafter "WHO Fact Sheet").[4]

44.     Obesity influences the quality of living, such as sleeping or moving. WHO Fact Sheet. This includes sleep impairments. As the American Society for Metabolic and

---

[3] https://www.ncbi.nlm.nih.gov/pmc/articles/PMC4386197 (last visited 5/23/24).
[4] https://www.who.int/news-room/fact-sheets/detail/obesity-and-overweight#:~:text=Key%20facts,years%20and%20older)%20were%20overweight (last visited 5/23/24).

Bariatric Surgery has explained, pain, sleep apnea, other breathing problems, the need to urinate more frequently, and altered regulation of body temperature can result in poor sleep for people with obesity. American Society for Metabolic and Bariatric Surgery ("ASMBS"), Disease of Obesity.[5]

45.     In sum, obesity is a recognized physiological medical condition that substantially impairs major bodily functions, including one's endocrine, cardiovascular, and musculoskeletal systems. It is an impairment that causes concurrent physiological changes in the body and is caused by a variety of factors including physiological factors. This is true for all individuals who are diagnosed with obesity and whose physicians recommend treatment for the disease with prescription medications.

46.     Critically, being overweight, as opposed to being obese, means having more body weight than is considered normal for an individual's age and height. Being overweight, by itself, is not a disease condition or impairment. Unlike obesity, being overweight, by itself, does not substantially impact major bodily functions.

47.     People diagnosed with obesity experience substantial limitation of their ability to perform major bodily functions when compared to the majority of people in the general population.

**B.      Diagnosing Obesity**

48.     Obesity is a chronic disease that requires screening, diagnosis/evaluation and intervention/treatment.

---

[5] https://asmbs.org/patients/disease-of-obesity/ (last visited 5/23/24).

49.     The initial screening for obesity is usually done by calculating body mass index ("BMI"), a ratio of weight and height that has been shown in actuarial and public health studies to correlate with risk for premature mortality.

50.     While having a BMI of 30 is commonly associated with obesity, relying on BMI alone may result in misclassification, (*i.e.*, not everyone with BMI over 30 will be diagnosed with obesity by their medical provider, and sometimes people with lower BMI may be diagnosed with obesity) but as a screening tool, it is inexpensive and efficient.

51.     A diagnosis of obesity is reached after a diagnosing provider considers the clinical effects of BMI on a patient's health via a medical history and physical examination. The clinical review considers the patient's risk for obesity, history of weight trajectory, and impact of the patient's weight on their health status, quality of life and functionality.

52.     Based upon these results, patients may be diagnosed with obesity and be eligible for evidence-based, effective medical treatment to treat that diagnosed medical condition.

**C.     Obesity Is Treated with Medically Necessary Medications, Counseling, and/or Surgery.**

53.     Evolving research on obesity reveals that it is a chronic, relapsing, multi-factorial disease. It is not resolved through "personal responsibility" or willpower. It is a disease that benefits from medical treatment.

54.     There are proven, clinically effective treatments for obesity.

55.    These treatments include behavioral counseling, Food and Drug Administration ("FDA") approved medications or medical device placement, and/or bariatric/metabolic surgery.

56.    For example, in 2021, the FDA approved Wegovy as a medication for treatment of obesity.[6]

57.    Wegovy works by mimicking a hormone called glucagon-like peptide-1 (GLP-1) that targets areas of the brain that regulate appetite and food intake.

58.    Wegovy was reviewed in four random, double-blind, placebo-controlled trials. Patients in the trials lost between 6% and 12.4% of their initial body weight, compared to those who received the placebo.

59.    Tirzepatide, the generic version of Zepbound, the medication Plaintiff Whittemore was prescribed, is approved by the FDA for treatment of obesity.[7]

60.    Tirzepatide has been the subject of at least two random controlled double-blind placebo-controlled trials for treatment of obesity or weight management with a co-occurring weight-related condition. In those trials, patients receiving Tirzepatide achieved statistically significant weight reduction, when compared with those receiving placebo treatment.

---

[6] https://www.fda.gov/news-events/press-announcements/fda-approves-new-drug-treatment-chronic-weight-management-first-2014 (last visited 3/14/24).
[7] https://www.fda.gov/news-events/press-announcements/fda-approves-new-medication-chronic-weight-management (last visited 5/20/24).

### D.   History of Disability-Based Exclusions in Health Coverage

61.     Based on information and belief, the Obesity Exclusion is based on historic stigma and prejudice against people diagnosed with obesity.

62.     Commercial health insurance grew out of contracts established in the 1930s and 1940s in which physicians were paid a monthly fee for providing the health coverage of their workers. Insurers like Cigna initially offered coverage only to employer-based groups. Eventually, Cigna and other insurers began to offer direct enrollment to individuals as well as employer-based groups. These plans could freely avoid providing coverage to any groups that were viewed as undesirable risks, including individuals with disabling conditions. *See* Blake, p. 1085. Based upon information and belief, Cigna's benefit design during this period did not provide coverage for disability-related conditions, including obesity.

63.     In 1965, the Medicare and Medicaid Act was signed into law. These two programs were intended to meet the needs of the elderly and disabled, two populations that were generally excluded from coverage by private insurance. This created a separate system for people who were elderly or disabled.

64.     Medicare began to cover bariatric surgery for treatment of obesity starting in 2006. Based on information and belief, at some point, Cigna began to cover bariatric surgery for treatment of obesity, but only in certain of its health plans.

65.     In Ms. Whittemore's health plan, all coverage for obesity is excluded, except for limited coverage for bariatric surgery for people diagnosed with severe obesity.

66.     Until the ACA was passed, health insurers like Cigna were free to discriminate in the design of their benefits, including benefits related to obesity. *Schmitt v. Kaiser Found. Health Plan of Wash.*, 965 F.3d 945, 948 (9th Cir. 2020). The ACA, however, requires health entities to ensure that their benefit design and administration do not result in disability discrimination. *See* 42 U.S.C. § 18116(a). Accordingly, upon implementation of the ACA, covered health entities, like Cigna, should have reconsidered whether historic disability-based exclusions, like the Obesity Exclusion, were the result of discrimination or were justified using the same medical and scientific standards applied to all other covered services.

## II.     Factual Background about Cigna's Discriminatory Plan

### A.     The Obesity Exclusion

67.     Cigna designs and administers health plans for hundreds of thousands of health consumers across the country.

68.     Cigna's health plans generally cover medically necessary medications to treat illness or injury. *See, e.g., Ex. 3* at 55-59; *Ex.4* at 3.

69.     Cigna maintains an internal medical policy that recognizes that prescription medications like Zepbound and Wegovy can be medically necessary and effective for the treatment of obesity. *See Ex. 1-2.*

70.     Cigna also recognizes that prescription medications and bariatric surgery are appropriate interventions for the treatment of obesity. *See Ex. 5.*[8]

---

[8] https://www.cigna.com/knowledge-center/hw/medical-topics/obesity-hw252864 (last visited 5/24/24).

71.     Despite recognizing that treatment of obesity (through prescription medications or surgery) is medically effective and appropriate, Cigna designed the Obesity Exclusion for certain of its health plans and administers the Obesity Exclusion for certain customers/clients. It continues to do so.

72.     Cigna's design, administration, and enforcement of the Obesity Exclusion is a form of illegal discrimination under Section 1557, since it is based on an enrollee's diagnosis with obesity, a disabling health condition.

73.     Specifically, Cigna designed the Obesity Exclusion to target and exclude the prescription medications needed by enrollees with obesity. The denial of coverage is triggered by a request for a prescription medication used to treat a diagnosis of obesity. In essence, the diagnosis of obesity causes the denial. But, as Cigna's internal policies confirm, the Obesity Exclusion is not based upon clinical or medical evidence.

74.     Cigna excludes all coverage for prescription medications it deems related to obesity, even though it covers the same or similar prescription medications for other medical conditions, such as diabetes. To the extent enrollees who are not diagnosed with obesity (or a co-morbid disabling condition as described in Cigna's medical policy) seek treatment related to weight control, such treatment does not meet the medical necessity requirements of Cigna's internal medical policy. *Ex. 3*: Internal Med. Policy. These claims are already excluded as "not medically necessary." Thus, the Obesity Exclusion is targeted at excluding medically necessary treatment required by enrollees diagnosed with obesity.

75.     The application of Cigna's Obesity Exclusion denies individuals diagnosed with obesity, a disabling condition, the benefits and health coverage available to other enrollees. Moreover, Cigna's exclusion is based on their disability.

### B.     Intentional Discrimination

76.     Cigna's design and administration of the Obesity Exclusion is an intentional act from which facial discrimination may be inferred. *Schmitt*, 965 F.3d at 954.

77.     Given the history discussed above and on information and belief, the Obesity Exclusion, in one form or another, has always been part of the benefit design in Cigna's health plans.

78.     Based on information and belief, Cigna did not consider whether the Obesity Exclusions in the health plans it insured and administered resulted from historic discrimination and prejudice, even when Cigna evaluated whether its benefit design practices complied with the non-discrimination requirements in the ACA.

79.     Based on information and belief, Cigna has never evaluated whether the Obesity Exclusion was based on medical and scientific evidence. Indeed, Cigna's existing internal medical policies confirm that these medications are safe and medically effective treatment for obesity. *See Exs. 3–4*. Yet, Cigna has not taken action to include coverage for such treatment in all of the health plans that it designs and administers.

80.     Based on information and belief, Cigna did not engage in a "cost-benefit" analysis to determine whether coverage of prescription medications to treat obesity should be added to all of the health plans it insures and administers.

81.     Cigna continues to design and administer the Obesity Exclusion in certain health plans it designs and administers simply because it had always done so.

82.     But make no mistake, the Obesity Exclusion is targeted at eliminating otherwise medically necessary coverage for its enrollees who are diagnosed with obesity and are disabled due to that diagnosis.

83.     Given Cigna's existing internal guidelines, the only purpose of the Obesity Exclusion is to eliminate coverage of medically necessary prescription medications for the treatment of obesity, *i.e.*, the precise coverage often needed by disabled enrollees diagnosed with obesity.

84.     By intentional design, the Obesity Exclusion is uniquely and specifically targeted at enrollees disabled due to a diagnosis of obesity. Based on information and belief, Cigna deliberately designed and administered the Exclusion to ensure that medically necessary prescription medications for the treatment of obesity needed by disabled enrollees diagnosed with obesity would not be covered.

### C.     Proxy Discrimination

85.     The Obesity Exclusion, while described in Ms. Whittemore's Cigna health plan in certain places as an exclusion of prescription medications related to "weight loss," it is also a proxy for discrimination against enrollees diagnosed with obesity, all of whom are "qualified individuals with disabilities" under Section 1557.

86.     Even if the Exclusion is characterized as a "weight loss" exclusion, the "fit" of the Exclusion (*i.e.,* how closely it correlates to disability) is sufficiently close to constitute proxy discrimination.

87.    As described above, all people diagnosed with obesity meet the definition of "disability" relied upon in Section 1557, such that an exclusion of all prescription medications that would otherwise be considered medically necessary for the treatment of obesity is proxy discrimination.

88.    In other words, there is a reasonably strong correlation between disability and treatment with medically necessary weight loss drugs, as indicated by Cigna's internal medical policy.

89.    While some non-disabled enrollees may seek weight loss medications for treatment, such treatment is not considered medically necessary under Cigna's existing medical policy. According to Cigna, the treatment is only medically necessary when there is a diagnosis of obesity (BMI over 30), or a BMI of 27 with a co-occurring medical condition that is also a disability. *See e.g., Ex. 1,* at 2*.*

90.    Accordingly, the "fit" between disabled individuals who are denied coverage as a result of the Obesity Exclusion, and those who would be eligible for coverage under the Cigna policy, but for the application of the Exclusion is quite close. *See Fuog v. CVS Pharmacy, Inc.,* 2022 U.S. Dist. LEXIS 84045, at *14 (D.R.I. May 10, 2022) (at the pleading stage, similar allegations were sufficient for a Section 1557 proxy discrimination claim to proceed). In sum, the Obesity Exclusion is illegal proxy discrimination because it targets disabled enrollees who seek medically necessary weight loss treatment for their obesity.

### D.    Disparate Impact Discrimination

91.    Alternatively, even if the Court were to conclude that the Obesity Exclusion is "facially neutral," and not a form of "proxy" discrimination, the Obesity Exclusion disparately impacts enrollees with the medical condition of obesity. Specifically, Cigna's Exclusion denies enrollees diagnosed with obesity "meaningful access" to the prescription medication benefit and to the administrative appeal and external review process.

92.    Enrollees diagnosed with obesity do not receive prescription drug treatment for their health condition, such that they do not have "meaningful access" to the prescription drug benefit. At the same time, other enrollees have access to a wide range of medically necessary medications to treat their diagnosed health conditions. In sum, as the result of the Exclusion, enrollees diagnosed with obesity are not treated the same as other enrollees.

93.    While non-disabled enrollees may seek weight control services, those services are not typically medical in nature (*i.e.,* they are not prescribed by a licensed health provider and do not treat a diagnosed health condition of obesity or co-morbid condition). Indeed, none of those enrollees would be eligible for coverage of these medications under Cigna's existing medical policy. *Ex. 3.* As a result, those non-disabled individuals would not be entitled to coverage, even if the Obesity Exclusion were removed. Moreover, the fact that the Obesity Exclusion may impact people who are not disabled, a form of "over-discrimination," does not relieve Cigna from liability. *See Schmitt,* 965 F.3d at 959.

94.     Similarly, the fact that some Cigna plans may cover bariatric surgery for people with severe obesity does not make the Exclusion any less discriminatory. *See, e.g., Lovell v. Chandler*, 303 F.3d 1039, 1054 (9th Cir. 2002) (a defendant's "appropriate treatment of some disabled persons does not permit it to discriminate against other disabled people under any definition of 'meaningful access.'"). Cigna does not meet the needs of Ms. Whittemore and the proposed class because they seek medically necessary prescription medications to treat their condition—not bariatric surgery. Indeed, many class members may not be candidates for bariatric surgery and/or they prefer the less invasive, and potentially more effective treatment with prescription medications.

95.     Additionally, enrollees diagnosed with obesity are denied "meaningful access" to the Cigna administrative appeal and external review procedures. As described in Ms. Whittemore's Cigna plan, there is no appeal right for Cigna's denial of coverage for medically necessary prescription drugs to treat obesity, while all other forms of denials related to medically necessary treatment generally have appeal rights.

## III.    Plaintiff Whittemore and Other Enrollees Have Been and Continue to be Subject to and Harmed by Cigna's Discriminatory Plan.

### A.     Plaintiff Jamie Whittemore

96.     Plaintiff Jamie Whittemore is one of the many enrollees in Cigna's health plans that contain an Obesity Exclusion.

97.     Ms. Whittemore is an employee of the University of Maine System. Through her employment with the University of Maine System, Ms. Whittemore is

enrolled in a health plan with coverage designed and administered by Cigna. Ms. Whittemore's Cigna health plan contains the Obesity Exclusion.

98.     Ms. Whittemore is a "qualified person with a disability" because she has been diagnosed with obesity and it substantially limits a major life activity such that she requires medical treatment related to that condition. *See* 42 U.S.C. § 12102(1)(A). The same is true for all proposed class members.

99.     Specifically, Ms. Whittemore is diagnosed with obesity, a physiological disorder or condition affecting one or more body systems, such that she has an "impairment" under the federal definition of disability. 42 U.S.C. § 12102(1)(A); 29 C.F.R. § 1630.2(h).

100.     Ms. Whittemore was diagnosed with this condition by a licensed health professional. *See, e.g., Farrington v. Bath Iron Works Corp.*, No. 01-274-P-H, 2003 U.S. Dist. LEXIS 1938, at *36 (D. Me. Feb. 7, 2003); *Scutt v. UnitedHealth Ins. Co.*, 2022 U.S. Dist. LEXIS 45445, *12 (D. Haw. Mar. 15, 2022) (allegations of medically diagnosed impairment were sufficient to plead federal disability discrimination).

101.     Additionally, Ms. Whittemore's obesity "substantially limits" at least one "major life activity." Major life activity includes the operation of major bodily functions, such as operation of the cardiovascular system, endocrine system and musculoskeletal functions. 29 C.F.R. § 1630.2(i)(1)(ii).

102.     As described above, obesity substantially limits major bodily functions, including an individual's endocrine, musculoskeletal, respiratory and cardiovascular systems. This is true for all individuals who are diagnosed with obesity and whose

physicians recommend treatment with prescription medication. Consistent with these common limitations for individuals diagnosed with obesity, Whittemore's obesity substantially limits the major life activities of walking, standing, and sleeping.

103.    Whittemore's ability to perform these major life activities is substantially limited when compared to most people in the general population. *See* 29 C.F.R. § 1630.2(j)(1)(ii); 28 C.F.R. § 36.105(d)(1)(v).

104.    On or about February 7, 2023, Dr. Kasey Little, Ms. Whittemore's treating physician, recommended and prescribed her treatment with Ozempic. At that time, Cigna covered Ozempic, and Ms. Whittemore began taking the prescribed dose.

105.    Subsequently, Dr. Little referred Ms. Whittemore to Dr. Burtis for continuing specialized care, and Ms. Whittemore continued on Ozempic.

106.    On or around September 7, 2023, Cigna denied coverage for Ms. Whittemore's Ozempic.  The denial stated "This request is denied because the medication is not currently FDA approved for weight loss."  Cigna suggested that Ms. Whittemore's provider could resubmit a preauthorization request for a medication that is FDA approved for weight loss.

107.    As a result, on or around February 29, 2024, Dr. Burtis submitted a preauthorization request on behalf of Ms. Whittemore for Zepbound, a medication that is FDA approved for the treatment of obesity.

108.    Cigna promptly denied the request because the "[d]rug is not covered by the plan." No notice of the denial was provided to Ms. Whittemore.

109.    Cigna would cover the prescription medication Ms. Whittemore requires but for the presence of the Obesity Exclusion in her Cigna health plan. The medication Ms. Whittemore seeks, for example, is already included on the Cigna Prescription Drug List such that it is covered when medically necessary. *See Ex. 2* at 17.

110.    On or about March 14, 2024, Ms. Whittemore appealed the denial of coverage for Zepbound. *Ex. 6.* Cigna never responded to the appeal.

111.    In April 2024, Ms. Whittemore was told by a Cigna customer service representative that she had no right to appeal the denial of coverage for Zepbound, and she would not receive a response to her appeal letter.

112.    No administrative appeal is required before a claim under Section 1557 for disability discrimination may be brought.

113.    In any event, such an appeal would be futile given Cigna's clearly articulated position in its denial letter. *See Horan v. Cigna Steel Ret. Plan*, 947 F.2d 1412, 1416 (9th Cir. 1991); *Drinkwater v. Metro. Life Ins. Co.*, 846 F.2d 821, 826 (1st Cir. 1988).

114.    Nonetheless, Ms. Whittemore attempted to exhaust her administrative appeals within Cigna but Cigna never responded to her appeal request. Indeed, under the terms of the Cigna plan, Ms. Whittemore has no appeal rights regarding the Obesity Exclusion. *Ex. 1*, pp. 55-56.

### B.      Other Enrollees with Obesity

115.    Ms. Whittemore is not unique. Based upon the Obesity Exclusion, Cigna has a standard policy of denying coverage of medically necessary prescription medications when the medications are sought to treat obesity.

116.    Based on information and belief, Cigna administers the Obesity Exclusion by denying all pre-authorization and post-service claims for prescription medications submitted with a diagnosis related to obesity. That is exactly what occurred for Ms. Whittemore. Cigna denied the appeal of her pre-authorization request for Zepbound because Cigna administered the Obesity Exclusion in her health plan. *Ex. 1* at 60.

117.    But for Cigna's decision to design and administer the Obesity Exclusion, the prescription medications required by Ms. Whittemore and the proposed class would be covered when medically necessary under Cigna's internal medical policy, its Prescription Drug List, and the remaining terms of the health plan.

118.    And again, obesity is a chronic disease that requires screening, diagnosis/evaluation and intervention/treatment. Accordingly, clinically effective, evidence-based treatment for obesity (a diagnosed medical condition)—including certain prescription medications—would be covered by Cigna ***but for*** Cigna's decision to design and administer the Obesity Exclusion in its health plans.

119.    As a direct result, Ms. Whittemore and some class members have been forced to forgo needed prescription medications to treat their obesity. Other members of the class have paid out-of-pocket for these medications that Cigna would have covered, but for the Obesity Exclusion.

120.    As a result of Cigna's deliberate discriminatory actions, Cigna enrollees with obesity, like Ms. Whittemore, do not receive coverage for medically necessary medications to treat their condition.

## CLASS ALLEGATIONS

121.    During the relevant time periods, Whittemore and members of the class have been enrolled in one or more health plans administered and/or insured by Cigna.

122.    Whittemore and other members of the class have been diagnosed with obesity and prescribed treatment with prescription medications for that condition. All require medical treatment for their obesity because it poses a substantial interference with major bodily functions, including endocrine, musculoskeletal, respiratory and cardiovascular systems, which are major life activities. Indeed, medical providers do not prescribe these serious medications to treat obesity unless the provider determines that the medications are medically appropriate for treatment of obesity.

123.    In sum, Whittemore and other members of the class are "qualified individuals with a disability" under Section 1557.

124.    Whittemore and proposed class members of the class have been, are, or will be diagnosed with obesity and have been, are, or will be prescribed prescription medications to treat obesity by a licensed health provider. In other words, Plaintiff and the putative class have required, require, and/or will require prescription medications to treat their obesity.

125.    *Definition of Class*. The proposed class consists of all individuals who:

(1)  have been, are, or will be enrolled in a Cigna-administered or Cigna-insured health plan that excludes all coverage for prescription medications to treat obesity at any time since June 4, 2020;

26

(2) have been, are or will be diagnosed with obesity by a medical provider; *and*

(3) have required, require or will require treatment for their diagnosed condition of obesity with prescription medications, while enrolled in a Cigna-administered or Cigna-insured health plan.

126. ***Size of Class***. The proposed class definition is so numerous that joinder of all members is impracticable.

127. ***Class Representative Jamie Whittemore.*** Ms. Whittemore was diagnosed with obesity on or before she was prescribed treatment with Zepbound for her obesity in February 2024.

128. Cigna denied coverage of medically necessary medication prescribed by Ms. Whittemore's treating physician because Ms. Whittemore's health plan—designed and administered by Cigna—contains the Obesity Exclusion. Ms. Whittemore submitted a written appeal of the denial to Cigna but received no written response. Cigna told Ms. Whittemore that she did not have any appeal rights. Her treating provider was similarly informed that no appeal was permitted by Cigna. Ms. Whittemore's claims are typical of the claims of the other members of the class because they, too, are subject to the Obesity Exclusion. Ms. Whittemore will fairly and adequately represent the interests of the class.

129. ***Common Questions of Law and Fact***. This action requires a determination of the following common question: Whether Cigna's design and administration of the

Obesity Exclusion violates Section 1557 of the ACA because it subjects Ms. Whittemore and the proposed class to illegal discrimination based on disability, including disparate treatment, proxy, and disparate impact discrimination. Adjudication of this issue will in turn determine whether: (1) Cigna may be enjoined from designing, enforcing, and administering the Obesity Exclusion in Ms. Whittemore's plan and in other similar plans; (2) Cigna may be liable for classwide prospective and retrospective injunctive relief and other appropriate classwide equitable relief; and (3) whether Cigna may be liable for other damages related to disability discrimination resulting from its design and administration of the Obesity Exclusion.

130. *Separate suits would create a risk of varying conduct requirements*. The prosecution of separate actions by proposed class members against Cigna would create a risk of inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct. Certification is therefore proper under Federal Rule of Civil Procedure 23(b)(1).

131. *Cigna Has Acted on Grounds Generally Applicable to the Class.* Cigna, by imposing the Obesity Exclusion, has acted on grounds generally applicable to the class, rendering declaratory and injunctive relief appropriate respecting the whole class. Certification is therefore proper under Federal Rule of Civil Procedure 23(b)(2).

132. *Questions of Law and Fact Common to the Class Predominate Over Individual Issues.* The claims of the individual class members are more efficiently adjudicated on a classwide basis. Any interest that individual members of the class may have in individually controlling the prosecution of separate actions is outweighed by the

efficiency of the class action mechanism. Issues as to Cigna's conduct in applying standard policies and practices towards all members of the class predominate over questions, if any, unique to members of the class. Certification is therefore additionally proper under Federal Rule of Civil Procedure 23(b)(3).

133.    Upon information and belief, there has been no class action suit filed against this defendant for the relief requested in this action.

134.    This action can be most efficiently prosecuted as a class action in the District of Maine where Ms. Whittemore resides and where Cigna does business.

135.    ***Class Counsel***. Whittemore has retained experienced and competent class counsel. Plaintiff is represented by Sirianni Youtz Spoonemore Hamburger PLLC, Nichols Kaster, PLLP, and Solidarity Law. Sirianni Youtz Spoonemore Hamburger is a Seattle-based law firm with significant experience representing individuals and classes who have been denied pension, health, or disability benefits under plans governed by federal and state law, including Section 1557 and ERISA. Nichols Kaster, PLLP is a 35-attorney firm that, over the course of its nearly 50-year history, has developed a sterling reputation in the legal community for representing consumers and employees in class and collective actions, including those under ERISA, Section 1557, and in insurance-related matters. Solidarity Law is run by Jeffrey Young of Cumberland, Maine. Mr. Young has practiced in Maine state and federal courts for more than thirty years, has significant experience representing people with disabilities, and has served as an Executive Board Member of the National Employment Lawyers Association and Vice President of the Maine Employment Lawyers Association.

**CLAIM FOR RELIEF—**
**Disability Discrimination**
**Under Section 1557 of the Affordable Care Act, 42 U.S.C. § 18116**

136.    Whittemore re-alleges and incorporates each of the allegations in the paragraphs above as though fully set forth herein.

137.    Federal disability anti-discrimination law requires that these allegations be construed "broadly in favor of expansive coverage." 28 C.F.R. § 36.105(d)(1)(i); 29 C.F.R. § 1630.2(j)(1)(i).

138.    Additionally, the definition of "disability" under the ACA should be interpreted broadly in light of the purpose of the ACA and its statutory requirements as a whole. *See, e.g., Schmitt v. Kaiser Found. Health Plan of Wash.*, 965 F.3d 945, 955 (9th Cir. 2020) (Because the ACA is designed to "provide adequate health care to as many individuals as possible" it "imposes an affirmative obligation [on covered entities]…to consider the needs of disabled people and not design plan benefits in ways that discriminate against them.").

139.    For example, the ACA is designed to ensure that health benefits, like prescription medications, are not "subject to denial…on the basis of the individuals'…present or predicted disability." 42 U.S.C. § 18022(4); *see also* 45 C.F.R. § 156.125 (extending anti-discrimination within health plans providing essential health benefits to discrimination based on "other health conditions").

140.    Whether one's obesity is caused by a different physiological condition or not is irrelevant under the ACA. Since the ACA's anti-discrimination requirements are designed to ensure adequate health care coverage for enrollees in the health plans

governed by the law, the source for a particular health condition does not matter. Rather, the ACA's focus is on ensuring that enrollees get adequate care for their medical conditions.

141.    Because the ACA's purpose is to ensure broad access to health coverage when medically appropriate, regardless of disability or health condition, the ACA's Section 1557 allows for claims of disability discrimination, such as the challenge here to elimination of treatment for obesity, even when similar claims might not be viable under the Rehabilitation Act or the Americans with Disabilities Act. *See Schmitt*, 965 F.3d at 955.

142.    Here, Plaintiff states this cause of action under the ACA on behalf of herself and members of the proposed class for purposes of seeking declaratory and injunctive relief, and she challenges the disability-based discrimination arising out of the design and administration of the Obesity Exclusion, both facially and as applied to Plaintiff and the proposed class.

143.    Section 1557 of the ACA, 42 U.S.C. § 18116, provides that "an individual shall not, on the ground prohibited under … section 504 of the Rehabilitation Act of 1973 (29 U.S.C. § 794), be excluded from participation in, be denied the benefits of, or be subjected to discrimination under, any health program or activity, any part of which is receiving Federal financial assistance."

144.    Cigna is a covered "health program or activity," a part of which receives federal financial assistance and is therefore a "covered entity" for purposes of Section 1557.

145.    Because Cigna is a covered entity under Section 1557 of the ACA, Plaintiff and members of the proposed class have a right under Section 1557 to receive health benefits designed and/or administered by Cigna free from discrimination on the basis of disability.

146.    A covered entity, such as Cigna, cannot cover medically necessary prescription medications for other enrollees, while excluding the same or similar prescription medications for enrollees diagnosed with obesity, a disabling health condition. To do so is discrimination based upon disability.

147.    Cigna has discriminated against Plaintiff and the members of the proposed class on the basis of disability in violation of Section 1557 and have thereby denied Plaintiff and the members of the proposed class the full and equal participation in, benefits of, and right to be free from discrimination in a covered health program or activity.

148.    Plaintiffs and the members of the proposed class have been and continue to be injured by Cigna's administration, application, and enforcement of the Obesity Exclusion and they are entitled to reprocessing of all claims wrongfully denied and all medical expenses never submitted for consideration to Cigna as a result of the Exclusion.

149.    Without reprocessing, declaratory, and prospective injunctive relief from Cigna's ongoing, discriminatory actions, Plaintiffs and proposed class members have suffered and will continue to suffer, irreparable harm.

## DEMAND FOR RELIEF

WHEREFORE, Whittemore requests that this Court:

1.      Certify this case as a class action; designate Whittemore as class representative; and designate SIRIANNI YOUTZ SPOONEMORE HAMBURGER PLLC, Eleanor Hamburger, Daniel S. Gross and Richard E. Spoonemore and NICHOLS KASTER, PLLP, Anna P. Prakash and Paul Lukas, and SOLIDARITY LAW, PLLC, Jeffrey Young and Margaret O'Neil of as Class Counsel;

2.      Enter judgment on behalf of Plaintiff and the class due to Cigna's discrimination on the basis of disability under Section 1557 of the Affordable Care Act;

3.      Declare that Cigna violated the rights of Whittemore and the members of the proposed class under Section 1557 of the ACA, when it designed and/or administered the Obesity Exclusion in their health plans;

4.      Enjoin Cigna from applying the Obesity Exclusion now and in the future to claims from Whittemore and the proposed class;

5.      Require Cigna, its agents, employees, successors, and all others acting in concert with them to reprocess and, when medically necessary and meeting the other terms and conditions under the relevant plans, provide coverage (payment) for all denied pre-authorizations and denied claims for coverage of prescription medications to treat obesity during the class period;

6.      Enter judgment in favor of the named Plaintiff and the Plaintiff class designed to fully compensate Plaintiff and the class for the harm suffered due to Cigna's

conduct in violation of Section 1557 of the Affordable Care Act, including but not limited to nominal damages;

7.     Award reasonable attorney fees, costs, and expenses under 42 U.S.C. § 1988 and all other applicable statutes; and

8.     Award such other and further relief as is just and proper.

DATED: June 4, 2024                        **SOLIDARITY LAW, PLLC**

*Jeffrey Neil Young*
Jeffrey Neil Young (ME Bar #3874)
Margaret O'Neil (ME Bar #10705)
jyoung@solidaritylaw.com
moneil@solidaritylaw.com
9 Longmeadow Road
Cumberland Foreside, ME 04110
Tel. (207) 844-4243

**SIRIANNI YOUTZ**
**SPOONEMORE HAMBURGER PLLC**
Eleanor Hamburger (WSBA #26478)*
Richard E. Spoonemore (WSBA #21833)*
Daniel S. Gross (WSBA #23992)*
ehamburger@sylaw.com
rspoonemore@sylaw.com
dgross@sylaw.com
3101 Western Avenue, Suite 350
Seattle, WA 98121
Tel. (206) 223-0303; Fax (206) 223-0246
* Application for admission *pro hac vice*
forthcoming

**NICHOLS KASTER, PLLP**
Paul J. Lukas (MN Bar No. 022084X)*
Anna P. Prakash (MN Bar No. 0351362)*
lukas@nka.com
aprakash@nka.com
4700 IDS Center
80 South 8th Street
Minneapolis, MN 55402
Tel. (612) 256-3200; Fax: (612) 338-4878
* Application for admission *pro hac vice*
forthcoming

**Attorneys for Plaintiff Jamie Whittemore
and the Proposed Classes**