## UNITED STATES DISTRICT COURT
## DISTRICT OF MAINE

|  |  |
|---|---|
| JAMIE WHITTEMORE, on her own behalf and on behalf of similarly situated others, <br><br> Plaintiff, <br><br> v. <br><br> CIGNA HEALTH AND LIFE INSURANCE COMPANY, <br><br> Defendant. | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> )    Case No.:  2:24-cv-00206-JCN |

## DEFENDANT CIGNA HEALTH AND LIFE INSURANCE COMPANY'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT <u>AND INCORPORATED MEMORANDUM OF LAW</u>

## <u>**TABLE OF CONTENTS**</u>

INTRODUCTION ....................................................................................................................1

FACTUAL BACKGROUND ...................................................................................................2

LEGAL STANDARD...............................................................................................................5

ARGUMENT ............................................................................................................................6

I.      Plaintiff Has Not Pled She Has a Disability Because Courts Have
        Consistently Held that Obesity, Without a Physiological Disorder, Is Not a
        Disability.........................................................................................................7

        A.      Obesity is not a physical impairment unless caused by a distinct
                physiological disorder. ...............................................................7

        B.      A medical diagnosis is insufficient to establish that obesity
                substantially limits a major life activity....................................11

        C.      Plaintiff has not pled sufficient facts to plausibly allege that her
                obesity substantially limits her in a major life activity. ............13

II.     Plaintiff Has Not Sufficiently Pled Discrimination. .............................................13

        A.      Plaintiff has not stated a claim for intentional discrimination. .................14

        B.      Plaintiff has not stated a claim for proxy discrimination..........................16

        C.      Plaintiff has not stated a claim for disparate impact discrimination..........19

CONCLUSION........................................................................................................20

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Air Sunshine, Inc. v. Carl*,
663 F.3d 27 (1st Cir. 2011)....................................................................................13

*Alexander v. Choate*,
469 U.S. 287 (1985)............................................................................................19

*Andrews v. State of Ohio*,
104 F.3d 803 (6th Cir. 1997) ..................................................................................7

*Bax v. Drs. Med. Ctr. of Modesto, Inc.*,
52 F.4th 858 (9th Cir. 2022) .............................................................................6, 10

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)...............................................................................................5

*Boroian v. Mueller*,
616 F.3d 60 (1st Cir. 2010).....................................................................................5

*Brownwood v. Wells Trucking, LLC*,
2017 WL 9289453 (D. Colo. Nov. 9, 2017) ..........................................................8

*Calero-Cerezo v. U.S. Dep't of Just.*,
355 F.3d 6 (1st Cir. 2004)...................................................................................6, 7

*Cardigan Mountain Sch. v. N.H. Ins. Co.*,
787 F.3d 82 (1st Cir. 2015)...................................................................................16

*Carreras v. Sajo, Garcia & Partners*,
596 F.3d 25 (1st Cir. 2010)...................................................................................12

*Carroll v. Xerox Corp.*,
294 F.3d 231 (1st Cir. 2002)...................................................................................6

*Cook v. Dep't of Mental Health, Retardation, & Hosps.*,
10 F.3d 17 (1st Cir. 1993)..................................................................................9, 10

*Curran v. Cousins*,
509 F.3d 36 (1st Cir. 2007).....................................................................................5

*Davis v. New York*,
2023 WL 10351576 (W.D.N.Y. Dec. 20, 2023)...................................................13

*Doe v. BlueCross BlueShield of Tenn., Inc.*,
    926 F.3d 235 (6th Cir. 2019) ............................................................11

*Doe v. CVS Pharmacy, Inc.*,
    982 F.3d 1204 (9th Cir. 2020) ..........................................................10

*Dunn v. City of Los Angeles*,
    2017 WL 7726724 (C.D. Cal. Aug. 10, 2017)...................................16

*E.S. v. Regence BlueShield*,
    2022 WL 279028 (W.D. Wash. Jan. 31, 2022)............................17, 18

*Espino v. Regents of the Univ. of Cal.*,
    666 F. Supp. 3d 1065 (C.D. Cal. 2023) ..............................................6

*Feliciano-Hernández v. Pereira-Castillo*,
    663 F.3d 527 (1st Cir. 2011)...............................................................5

*Fortin on behalf of TF v. Hollis Sch. Dist.*,
    2017 WL 4157065 (D.N.H. Sept. 18, 2017) ....................................14

*Francis v. City of Meriden*,
    129 F.3d 281 (2d Cir. 1997)................................................................7

*Fuog v. CVS Pharmacy, Inc.*,
    2021 WL 4355402 (D.R.I. Sept. 24, 2021)......................................20

*Fuog v. CVS Pharmacy, Inc.*,
    2022 WL 1473707 (D.R.I. May 10, 2022) .......................................17

*Griffin v. United Parcel Serv., Inc.*,
    661 F.3d 216 (5th Cir. 2011) ......................................................11, 12

*Hayes v. Wal-Mart Stores, Inc.*,
    781 F. Supp. 2d 1080 (D. Or. 2011) ...................................................8

*Hill v. Verizon Md., Inc.*,
    2009 WL 2060088 (D. Md. July 13, 2009)........................................8

*Kelley v. Mayhew*,
    973 F. Supp. 2d 31 (D. Me. 2013) .....................................................6

*Lewis v. Spurwink Servs., Inc.*,
    2022 WL 17454078 (D. Me. Dec. 6, 2022) .....................................14

*Lockheed Corp. v. Spink*,
    517 U.S. 882 (1996)..........................................................................19

*López Santiago v. Med Centro, Inc.*,
   2023 WL 8809479 (D.P.R. Dec. 20, 2023) ...............................................8, 10, 13

*Lovell v. Chandler*,
   303 F.3d 1039 (9th Cir. 2002) ...................................................................20

*McCarthy v. Mass. Gen. Brigham Inc.*,
   2024 WL 3416025 (D. Mass. July 15, 2024) ..............................................10

*Morriss v. BNSF Ry. Co.*,
   817 F.3d 1104 (8th Cir. 2016) .....................................................................7

*Ni v. Rite Aid of N.J.*,
   2010 WL 2557523 (D.N.J. June 22, 2010) ...................................................8

*Ramos-Echevarria v. Pichis, Inc.*,
   659 F.3d 182 (1st Cir. 2011)......................................................................10

*Revolinski v. Amtrak*,
   2011 WL 2037015 (E.D. Wis. May 24, 2011)...............................................8

*Richardson v. Chi. Transit Auth.*,
   926 F.3d 881 (7th Cir. 2019) ............................................................1, 7, 8, 9

*Schmitt v. Kaiser Found. Health Plan of Wash.*,
   965 F.3d 945 (9th Cir. 2020) ........................................................... *passim*

*Sepúlveda-Villarini v. Dep't of Educ. of P.R.*,
   628 F.3d 25 (1st Cir. 2010)..........................................................................5

*Shine v. N.Y.C. Hous. Auth.*,
   2020 WL 5604048 (S.D.N.Y. 2020)...........................................................13

*Silva v. Bd. of Cnty. Comm'rs for the Cnty. of Roosevelt*,
   2017 WL 4325769 (D.N.M. Sept. 26, 2017) .................................................8

*Smith v. Walgreens Boots All., Inc.*,
   2021 WL 3861451 (N.D. Cal. Aug. 30, 2021) ........................... *passim*

*Sturgill v. Norfolk S. Ry. Co.*,
   2019 WL 1063374 (E.D. Va. Mar. 6, 2019) .................................................8

*Valtierra v. Medtronic Inc.*,
   232 F. Supp. 3d 1117 (D. Ariz. 2017), *aff'd*, 934 F.3d 1089 (9th Cir. 2019)..........................8

**Statutes**

29 U.S.C. 705(9) .......................................................................................6

iv

29 U.S.C. § 794 ....................................................................................................6

42 U.S.C. § 18116 ................................................................................................6

Rehabilitation Act § 504 ................................................................................. *passim*

**Other Authorities**

29 C.F.R. § 1630(2)(h)(1) ...................................................................................6

89 FR 37522 ......................................................................................................15

89 FR 37537 ......................................................................................................15

89 FR 37539 ......................................................................................................15

Defendant Cigna Health and Life Insurance Company, by and through undersigned counsel, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, moves to dismiss Plaintiff Jamie Whittemore's ("Plaintiff") Complaint for failure to state a claim upon which relief can be granted.

## **INTRODUCTION**[1]

The entire premise of Plaintiff's case is that Cigna allegedly unlawfully discriminated against her based on her obesity when it denied coverage for two weight-loss drugs, but the unanimous weight of authority from various Circuits is that obesity is not a *per se* disability that would allow such a claim. Instead, these Courts of Appeals have found that, to allege a discrimination claim, the plaintiff must allege that their obesity was caused by a distinct physiologic condition or disorder. In fact, holding otherwise would mean "that all [individuals with obesity]—found to be as high as 39.8% of the American adult population—automatically have an ADA impairment [and would lead to a] nonrealistic result." *Richardson v. Chi. Transit Auth.*, 926 F.3d 881, 891 (7th Cir. 2019). Because Plaintiff alleges no such facts, her case should be dismissed for this reason alone. (*See infra* Sec. I.A.)

There are two other independent reasons that Plaintiff's claim fails. <u>First</u>, simply identifying a physical impairment is not enough to state a discrimination claim because to qualify as a disability, an impairment must substantially limit a major life activity. Therefore, even if Plaintiff sufficiently alleged her obesity was a physical impairment, Plaintiff must also allege

---

[1] In this brief, "Cigna" refers to Defendant Cigna Health and Life Insurance Company. References to "Compl." refer to Plaintiff's Complaint, Dkt. 1. References to "Compl. Ex." and the accompanying page references are to the page number included in the header of the document. Unless otherwise noted, all emphasis has been added, and all citations, alterations, and internal quotation marks have been omitted.

sufficient facts to show (i) how <u>her</u> obesity limits <u>her</u> and that (ii) those limits are substantial. Because she has not done so, her claim fails for this reason as well.  (*See infra* Sec. I.B-C.)

<u>Second</u>, Plaintiff's discrimination theories – intentional, proxy, and disparate impact – are also deficient.  The intentional discrimination theory fails because Plaintiff has not alleged that Cigna knew that obesity was a federally-protected disability when it designed and administered the allegedly discriminatory prescription drug benefits.  To the contrary, all the case law showed the opposite was true.  And the allegation that Cigna did not adequately review these benefits for compliance with the Affordable Care Act's ("ACA") non-discrimination provisions is far too general to plead intentional discrimination.  (*See infra* Sec. II.A.)

Plaintiff's proxy and disparate impact discrimination theories likewise fail because the Complaint does not allege facts that show how the disputed prescription drug benefits disproportionately impact individuals with obesity.  Plaintiff concedes that the exclusion for "any product dispensed for the purpose of appetite suppression (anorectics) or weight loss" applies to individuals diagnosed with obesity and overweight individuals who do not have obesity.  And in the face of this facially neutral exclusion, the Complaint does not allege any information about either of these two impacted groups – *i.e.*, the population who would otherwise be eligible for weight lost drugs or the percentages who are prescribed weight loss drugs – or other facts that show <u>how</u> this exclusion disproportionally impacts individuals with obesity.  Without such allegations, these theories fail too.  (*See infra* Sec. II.B-C.)

For these reasons, as further explained below, this case should be dismissed.

## FACTUAL BACKGROUND

Plaintiff Jamie Whittemore has health benefits through her employer, the University of Maine System ("UMS").  (Compl. ¶ 97.)  UMS self-funds its health plan (the "UMS Plan") and therefore funds, rather than insures, its employees' covered medical and prescription drug

expenses.  (Compl. ¶ 33, Ex. 3 at 6.)  Cigna provides claims administration services to the UMS Plan, including adjudicating claims according to its medical and prescription drug benefits.  (*Id.*)

An employer that offers health benefits, like UMS, decides which benefits it will offer its employees and which it will not.  (Compl. ¶ 15.)  For employers that choose to offer prescription drug benefits for weight loss drugs, like semaglutide (Wegovy) and tirzepatide (Zepbound), Cigna's Drug and Biologic Coverage Policies set forth the criteria for coverage, unless the plan terms otherwise specify.[2]  These policies include the FDA-approved criteria and do not limit coverage to treating obesity.[3]  For example, both Wegovy and Zepbound are approved for "chronic weight management" in adults with (1) obesity, or who are (2) overweight[4] "with at least one weight-related condition" (such as high blood pressure, type 2 diabetes or high cholesterol) "for use[]in addition to a reduced calorie diet and increased physical activity."  (*See* Note 3.)  Separate coverage policies apply to other weight loss drugs approved to treat obesity and being overweight.[5]

---

[2] Cigna coverage policies generally state: "In the event of a conflict, a customer's benefit plan document always supersedes the information in the Coverage Policies.  In the absence of a controlling federal or state coverage mandate, benefits are ultimately determined by the terms of the applicable benefit plan document.  Coverage determinations in each specific instance require consideration of 1) the terms of the applicable benefit plan document in effect on the date of service; 2) any applicable laws/regulations; 3) any relevant collateral source materials including Coverage Policies and; 4) the specific facts of the particular situation."  *See, e.g.*, Cigna Drug and Biologic Coverage Policy, Weight Loss – Semaglutide (Wegovy™) (Compl. Ex. 1 at 2.)

[3] The FDA approved semaglutide in 2021 and tirzepatide in 2023 "for chronic weight management in adults with general obesity or overweight[.]" *See* FDA NEWS RELEASE, *FDA Approves New Drug Treatment for Chronic Weight Management, First Since 2024*, https://perma.cc/RB4G-V549 (dated June 4, 2021) (news release for approval of semaglutide); FDA News Release, FDA Approves New Medication for Chronic Weight Management, https://perma.cc/MP2J-88QP (dated Nov. 8, 2023) (news release for approval of tirzepatide).

[4] For adults, the conditions of overweight and obesity are commonly identified by body mass index ("BMI") of 25-29.9 for overweight, and 30 and above for obesity.  (Compl. ¶¶ 24, 36–38, 46, 50).  "Nearly 3 in 4 adults age 20 or older in the United States have either overweight or obesity." NATIONAL HEART, LUNG, AND BLOOD INSTITUTE, *What Are Overweight and Obesity?*, https://perma.cc/KG7A-QPCN (Mar. 24, 2022).

[5] *See* Cigna Drug Coverage Policy for Weight Loss – Other Appetite Suppressants and Orlistat, https://perma.cc/2KHV-HT4L (last visited August 23, 2024).

3

None of these Cigna policies apply to plans, like Plaintiff's UMS Plan, that choose not to include these drugs in their prescription drug benefits.

The UMS Plan provides medical and prescription drug benefits and details those benefits in two distinct sections. (*See* Compl. Ex. 3 at 15, 54.) The UMS Plan's Prescription Drug Benefits, which are the sole issue here, do not cover "any product dispensed for the purpose of appetite suppression (anorectics) or weight loss." (Compl. ¶ 108, Ex. 3, p. 59.) The Complaint frames this benefit term as excluding "all coverage for prescription medications to treat obesity" and labels it the "Obesity Exclusion" – notwithstanding that it does not reference obesity or any other medical condition. (Compl. ¶¶ 2, 5.)[6] Plaintiff claims that this prescription weight loss drug exclusion unlawfully discriminates against her and all individuals diagnosed with obesity.

Plaintiff alleges that a licensed health professional diagnosed her with obesity and her treating physician prescribed her Ozempic. (Compl. ¶¶ 98–100.) She does not plead any other facts about her obesity diagnosis – i.e. her BMI, any comorbidities, cause(s), etc. – except that she claims it "substantially limits the major life activities of walking, standing, and sleeping." (*Id*. ¶ 102.) Cigna denied coverage for Ozempic in September 2023 and an authorization request for Zepbound in 2024 because the UMS Plan does not cover prescription weight loss drugs. (*Id*. ¶ 106–108.)

Plaintiff claims that Cigna designed and administered the UMS Plan's prescription weight loss drug exclusion and that this exclusion violates the Affordable Care Act's prohibition against disability-based discrimination. (*Id*. ¶ 142.) She alleges that obesity is a disability because it is a

---

[6] The UMS plan's Medical Benefits cover treatment for clinically severe (morbid) obesity. (Compl. Ex 3 at 43, 60.) The Medical Benefits do not otherwise cover medical services "intended primarily for the treatment or control of obesity" or "weight loss programs or treatments, whether prescribed or recommended by a Physician or under medical supervision." (*Id*.)

physiological disease that substantially limits major life activities in all individuals with obesity. (*Id*. ¶ 45.)  She admits that the exclusion applies to overweight participants, who do not have a disability (*id*. ¶ 46), <u>and</u> participants with obesity because, but for the exclusion, both can meet Cigna's medical necessity requirements for certain prescription weight loss drugs.  (*Id*. ¶ 89.)  Yet, she claims that (1) Cigna designed this exclusion to "target[]" individuals with obesity and deny them medically necessary prescription drug treatment on the basis of their alleged disability (*id*. ¶ 82); (2) "weight loss" is really just a proxy for obesity and therefore the exclusion is facially discriminatory (*id*. ¶ 85); and (3) the exclusion disproportionately impacts individuals with obesity (*id*. ¶ 91.).

## LEGAL STANDARD

To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the complaint must include factual allegations that, if proven true, demonstrate a plausible claim for relief.  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–58 (2007).  "[T]he plausibility standard asks for more than a sheer possibility that a defendant has acted unlawfully." *Boroian v. Mueller*, 616 F.3d 60, 65 (1st Cir. 2010).  Couching legal conclusions as allegations is not enough, and the complaint "must state a plausible, [but] not a merely conceivable, case for relief." *Sepúlveda-Villarini v. Dep't of Educ. of P.R.*, 628 F.3d 25, 29 (1st Cir. 2010).  "Where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint . . . has not shown that the pleader is entitled to relief." *Feliciano-Hernández v. Pereira-Castillo*, 663 F.3d 527, 533 (1st Cir. 2011).

On a Rule 12(b)(6) motion to dismiss, courts may consider not only the complaint, but also "documents the authenticity of which are not disputed by the parties . . . [and] documents central to plaintiffs' claim; [and] documents sufficiently referred to in the complaint," even when the documents are incorporated into the moving party's pleadings. *Curran v. Cousins*, 509 F.3d 36, 44 (1st Cir. 2007).

5

## **ARGUMENT**

Plaintiff's sole cause of action alleges that Cigna's designing and/or administering prescription drug benefits that do not cover prescription weight loss drugs is unlawful disability discrimination. Section 1557 of the ACA prohibits discrimination in certain health programs and activities that receive federal funding. *See* 42 U.S.C. § 18116. The ACA anti-discrimination provisions incorporate the disability discrimination prohibitions of Section 504 of the Rehabilitation Act. *Id.* Plaintiff's § 1557 claim is therefore "subject to the same analysis as a [Rehabilitation Act] Section 504 claim." *Espino v. Regents of the Univ. of Cal.*, 666 F. Supp. 3d 1065, 1088 (C.D. Cal. 2023); *see id.* at 1086 (citing 29 U.S.C. § 794.).

To plead disability discrimination, a plaintiff must allege sufficient facts to show that "(1) [s]he is an individual with a disability; (2) [s]he is otherwise qualified to receive a certain benefit; (3) [s]he was denied the benefits of a certain program solely by reason of [her] disability; and (4) the program receives federal financial assistance." *Id.* at 1086 (quoting *Bax v. Drs. Med. Ctr. of Modesto, Inc.*, 52 F.4th 858, 866 (9th Cir. 2022); *see also Lewis v. Spurwink Servs., Inc.*, 2022 WL 17454078, at *3 (D. Me. Dec. 6, 2022)). Section 504 incorporates the definition of disability in the Americans with Disabilities Act ("ADA"). *See* 29 U.S.C. 705(9).[7] To meet this definition, an individual must show (1) a physical or mental impairment; (2) that "substantially limits" a "major life activity." *Carroll v. Xerox Corp.*, 294 F.3d 231, 238 (1st Cir. 2002).[8] The determination of

---

[7] Case law "construing the ADA generally pertains equally to claims under the Rehabilitation Act." *Kelley v. Mayhew*, 973 F. Supp. 2d 31, 35 n.2 (D. Me. 2013) (quoting *Calero-Cerezo v. U.S. Dep't of Just.*, 355 F.3d 6, 19 (1st Cir. 2004)).

[8] EEOC regulations define "physical or mental impairment" as "[a]ny physiological disorder or condition, cosmetic disfigurement, or anatomical loss affecting one or more body systems, such as neurological, musculoskeletal, special sense organs, respiratory (including speech organs), cardiovascular, reproductive, digestive, genitourinary, immune, circulatory, hemic, lymphatic, skin, and endocrine." 29 C.F.R. § 1630(2)(h)(1).

whether a plaintiff has a disability must be made on a case-by-case basis. *Calero-Cerezo*, 355 F.3d at 20.

Plaintiff has not sufficiently pled that she has a legally-recognized disability or that she was denied benefits solely on the basis of a disability. Her claims should be dismissed.

## I.    Plaintiff Has Not Pled She Has a Disability Because Courts Have Consistently Held that Obesity, Without a Physiological Disorder, Is Not a Disability.

Plaintiff alleges that she and all individuals diagnosed with obesity and whose physicians recommend treatment with prescription weight loss drugs have a legal disability because obesity is (1) a physiological disease that (2) substantially impairs major bodily functions. (Compl. ¶¶ 35–40, 45, 47.) Put another way, Plaintiff claims that obesity is a *per se* disability. Appellate and district courts have almost universally rejected this proposition.

### A.    Obesity is not a physical impairment unless caused by a distinct physiological disorder.

Four Courts of Appeals have addressed whether obesity is a physical impairment. All four have found that a plaintiff must show that a physiological disorder caused their obesity for it to meet the definition of physical impairment. *See Richardson*, 926 F.3d at 887–88 (joining the "Second, Sixth, and Eighth Circuits" holding that "obesity is an ADA impairment only if it is the result of an underlying 'physiological disorder or condition'"); *see also Morriss v. BNSF Ry. Co.*, 817 F.3d 1104, 1108 (8th Cir. 2016) ("Under the plain language of this definition, obesity is not a physical impairment unless it is a physiological disorder or condition and it affects a major body system."); *Andrews v. State of Ohio*, 104 F.3d 803, 809–10 (6th Cir. 1997) (same); *Francis v. City of Meriden*, 129 F.3d 281, 286 (2d Cir. 1997) ("[Plaintiff]'s claim fails because obesity, except in

special cases where the obesity relates to a physiological disorder, is not a 'physical impairment' within the meaning of the statutes.").  The vast majority of district courts have found the same.[9]

The Seventh Circuit's decision in *Richardson* best explains the rationale and rejected the same arguments that Plaintiff makes in this case.  The court reviewed the EEOC's definition of impairment, the alleged impact of the 2008 ADA amendments, and the corresponding interpretive guidance, which reads:

> It is important to distinguish between conditions that are impairments and physical, psychological, environmental, cultural, and economic characteristics that are not impairments. The definition of the term "impairment" does not include physical characteristics such as eye color, hair color, left-handedness, or height, weight, or muscle tone that are within "normal" range and are not the result of a physiological disorder.

*Richardson*, 926 F.3d at 887–91.  The plaintiff in *Richardson* argued that this guidance meant that weight is an impairment if (1) not within the normal range, <u>or</u> (2) is the result of a physiological disorder.  *Id.* at 889–90.  The court rejected this reading and followed the Eighth Circuit's conclusion that weight "qualifies as a physical impairment only if it falls outside the normal range ***and*** it occurs as the result of a physiological disorder." *Id.* at 890.  Reading it any other way would mean that "any employee whose weight—or other physical characteristic—is even slightly outside the 'normal range' would have a physical impairment even with no underlying physiological cause." *Id.*  This would make the discrimination provision "a catch-all

---

[9] *See, e.g., López Santiago v. Med Centro, Inc.*, 2023 WL 8809479, at *3 (D.P.R. Dec. 20, 2023); *Sturgill v. Norfolk S. Ry. Co.*, 2019 WL 1063374, at *3–4 (E.D. Va. Mar. 6, 2019); *Brownwood v. Wells Trucking, LLC*, 2017 WL 9289453, at *6 (D. Colo. Nov. 9, 2017); *Silva v. Bd. of Cnty. Comm'rs for the Cnty. of Roosevelt*, 2017 WL 4325769, at *7–8 (D.N.M. Sept. 26, 2017); *Valtierra v. Medtronic Inc.*, 232 F. Supp. 3d 1117, 1123–25 (D. Ariz. 2017), *aff'd*, 934 F.3d 1089 (9th Cir. 2019); *Revolinski v. Amtrak*, 2011 WL 2037015, at *11 (E.D. Wis. May 24, 2011); *Hayes v. Wal-Mart Stores, Inc.*, 781 F. Supp. 2d 1080, 1091 (D. Or. 2011); *Ni v. Rite Aid of N.J.*, 2010 WL 2557523, at *3 (D.N.J. June 22, 2010); *Hill v. Verizon Md., Inc.*, 2009 WL 2060088, at *6 (D. Md. July 13, 2009).

cause of action for discrimination based on appearance, size, and any number of other things far removed from the reasons the ADA was passed." *Id.*

Various medical and scientific professional organizations submitted amicus briefs in *Richardson*. Like Plaintiff in this case, the amici argued that "because both the medical community and federal and state policymakers understand obesity as a disease, obesity is *in and of itself* a physiological disorder and therefore a physical impairment within the definition of the ADA." *Richardson*, 926 F.3d at 891 (emphasis in original). The court found this argument unpersuasive in the context of disability discrimination law and overreaching: "if we agreed that obesity is itself a physiological disorder, then all obesity would be an ADA impairment." *Id.* While the plaintiff in *Richardson* did not ask the court to hold "that all [individuals with obesity]—found to be as high as 39.8% of the American adult population—automatically have an ADA impairment, adopting amici's position leads to this unavoidable, nonrealistic result." *Id.* That is precisely what Plaintiff asks to the Court to do here.

Plaintiff claims that *Cook v. Dep't of Mental Health, Retardation, & Hosps.*, 10 F.3d 17, 21 (1st Cir. 1993) supports the contention that she and all individuals diagnosed with obesity whose physicians recommend treatment with prescription drugs are "qualified individuals with disabilities." (Compl. ¶ 19.) *Cook* does not stand for such a sweeping proposition.

*Cook* involved a Section 504 claim and whether a jury could have plausibly concluded that an employer regarded an individual with severe obesity as having a disability when it refused to hire her. *Cook,* 10 F.3d at 22–23. When deciding the first part of the two-prong disability analysis, the jury did not specify whether it found that the plaintiff's severe obesity was a physical impairment or was regarded as a physical impairment. *Id.* at 23. The First Circuit found that the

evidence, which included testimony from a medical professional about the plaintiff's severe obesity, plausibly supported either conclusion. *Id.* at 23–24.

Cook cannot be read to support Plaintiff's contention that all individuals diagnosed with obesity have a disability because (1) it is limited to the "physical impairment" prong of the disability analysis; and (2) the litany of cases in the subsequent two decades, including District Courts in the First Circuit, have held that "obesity does not qualify as a physical impairment under the ADA unless it is caused by an underlying physiological disorder or condition." *See, e.g.*, *McCarthy v. Mass. Gen. Brigham Inc.*, 2024 WL 3416025, at *3 (D. Mass. July 15, 2024) (holding the same); *López Santiago*, 2023 WL 8809479, at *3.  Even if the case law supported that an obesity diagnosis is a physical impairment, First Circuit law is clear that "[e]vidence of a medical diagnosis of impairment, standing alone, is insufficient to prove a disability." *Ramos-Echevarria v. Pichis, Inc.*, 659 F.3d 182, 187 (1st Cir. 2011).

Recognizing ADA and Section 504 case law forecloses her claim, Plaintiff claims the definition of "disability" should be interpreted more "broadly" for Section 1557 claims "in light of the purpose of the ACA and its statutory requirements as a whole." (Compl. ¶ 138.)  The Complaint cites *Schmitt v. Kaiser Found. Health Plan of Wash.*, 965 F.3d 945, 955 (9th Cir. 2020) for this proposition.  But *Schmitt* did not hold the definition of "disability" is any different under the ACA.  *Schmitt* held that the ACA allows a claim for discriminatory health benefit design even though the Rehabilitation Act does not.  *Id.*

The Ninth Circuit subsequently recognized the analysis under the ACA and Section 504 for a disability discrimination claim are exactly the same.  *Bax*, 52 F.4th at 873 (affirming judgment on ACA claims because they "are otherwise subject to the same analysis as the[] Section 504 claims"); *see also Doe v. CVS Pharmacy, Inc.*, 982 F.3d 1204, 1210 (9th Cir. 2020) ("Section 1557

does not create a new healthcare-specific anti-discrimination standard" and "to state a claim for a Section 1557 violation, they must allege facts adequate to state a claim under Section 504 of the Rehabilitation Act."). Other courts hold the same. *See, e.g.*, *Doe v. BlueCross BlueShield of Tenn., Inc.*, 926 F.3d 235, 239 (6th Cir. 2019) (same). Thus, Plaintiff misreads *Schmitt* and points to no authority supporting her position that the ACA requires the Section 504 and ADA definition of disability to be interpreted more broadly.

Plaintiff therefore has not sufficiently pled facts to allege that an underlying physiological condition caused her obesity. Her claim must be dismissed.

**B.    A medical diagnosis is insufficient to establish that obesity substantially limits a major life activity.**

Plaintiff alleges that obesity substantially limits major bodily functions "including one's endocrine, cardiovascular, and musculoskeletal systems" in <u>all</u> individuals diagnosed with obesity and whose physicians recommend treatment with prescription weight loss drugs. (Compl. ¶¶ 45, 102.) She also points to a litany of potential illnesses or disorders that <u>may</u> <u>be</u> associated with obesity, such as osteoarthritis, diabetes, hypertension, cancer, gallstones, and psychological distress. (Compl. ¶ 43.) Plaintiff alleges that "[o]besity influences the quality of living, such as sleeping or moving" and has a "strong association" with the "impairment of health-related quality of life." (Compl. ¶ 42, 44.) None of these allegations, if true, can plausibly support that obesity substantially limits a major life activity in Plaintiff or <u>all</u> individuals diagnosed with obesity.

"Neither the Supreme Court nor this court has recognized the concept of a *per se* disability under the ADA, no matter how serious the impairment; the plaintiff still must adduce evidence of an impairment that has actually and substantially limited the major life activity on which he relies." *Griffin v. United Parcel Serv., Inc.*, 661 F.3d 216, 223 (5th Cir. 2011). Courts must evaluate the effect of the alleged impairment on the individual plaintiff, "rather than relying on [her] diagnoses

alone, in order to determine whether [she] is disabled within the meaning of the ADA." *Carreras v. Sajo, Garcia & Partners*, 596 F.3d 25, 33 (1st Cir. 2010).

*Carreras* involved an individual with insulin-dependent diabetes and whether his diabetes substantially limited his ability to see and eat. 596 F.3d at 32–33. Relying on Ninth Circuit law, the First Circuit agreed that insulin-dependent diabetes is a physical impairment and that seeing and eating are major life activities. *Id.* at 33. The question was, therefore, whether the plaintiff's diabetes substantially limited <u>his</u> vision and <u>his</u> eating. *Id.* at 34. This inquiry is "fact-intensive and individualized." *Id.* at 33. Whether diabetes is a disability for ADA purposes "is a matter of degree" and an "individual living with diabetes may or may not experience a substantial limitation in his or her ability to eat as contrasted with the rest of the population." *Id.* at 34. The court reviewed how the plaintiff's diabetes affected his vision and his diet and eating patterns and found that it caused minor, not substantial limitations on his eating and sleeping. *Id.* at 35.

Here, Plaintiff's Section 1557 claim is largely based on the premise that obesity is a *per se* disability. This theory fails to state a claim as a matter of law. *Griffin*, 661 F.3d at 223; *Carreras*, 596 F.3d at 32–33. The Complaint lists various health-related conditions that <u>may</u> <u>be</u> associated with obesity. Even if obesity is a physical impairment that impacts a major life activity, like diabetes, whether obesity is a disability would require assessing how an individual's obesity impacted <u>them</u>. *Carreras*, 596 F.3d at 32–33. Courts would have to determine, for example, whether and to what extent an individual's obesity impacted ***their*** sleep, ***their*** ability to walk, ***their*** blood pressure, ***their*** mental health, etc. Plaintiff therefore cannot state a plausible claim that her obesity is a *per se* disability. Nor can she state a plausible claim on behalf of all individuals diagnosed with obesity. *See, e.g.*, *Smith v. Walgreens Boots All., Inc.*, 2021 WL 3861451, at *10

12

(N.D. Cal. Aug. 30, 2021) (finding that plaintiff had not plausibly alleged that purported class of patients diagnosed with chronic pain was disabled).

###### C.    Plaintiff has not pled sufficient facts to plausibly allege that her obesity substantially limits her in a major life activity.

Plaintiff's allegations about her obesity are conclusory and merely cite the legal standard. She alleges that she was diagnosed with obesity and that her obesity "substantially limits the major life activities of walking, standing, and sleeping." (Compl. ¶¶ 98–103.) These allegations are insufficient to survive a motion to dismiss.

Plaintiff must offer "factual specificity" to establish the limitations to a major life activity, such as describing their symptoms and "when they occur," "how often the symptoms occur," and "how long they last when they do occur." *Davis v. New York*, 2023 WL 10351576, at *4 (W.D.N.Y. Dec. 20, 2023) (dismissing ADA discrimination claim where Plaintiff alleged her condition limited her ability to breathe, but not how it did so); *Shine v. N.Y.C. Hous. Auth.*, 2020 WL 5604048, at *6 (S.D.N.Y. 2020) (dismissing ADA discrimination claim where Plaintiff alleged that, among other things, that she experienced "trouble sleeping" and "trouble breathing at night"); *López Santiago*, 2023 WL 8809479, at *3 (dismissing disability discrimination claim where plaintiff did not plead height and weight to establish obesity). Because Plaintiff alleges nothing more than conclusory allegations, her Complaint fails to state a claim and should be dismissed. *See Air Sunshine, Inc. v. Carl*, 663 F.3d 27, 37 (1st Cir. 2011) (finding "[m]ere broad conclusory allegations" are not a sufficient "substitute for a meaningful factual context" and dismissed complaint for failure to state a claim).

### II.    Plaintiff Has Not Sufficiently Pled Discrimination.

Plaintiff alleges that Cigna's design and administration of a plan exclusion for prescription weight loss drugs is (1) intentional discrimination; (2) proxy discrimination; and/or (3) disparate

impact discrimination against individuals with obesity.  None of these theories are sufficient to survive a motion to dismiss.

### A.      Plaintiff has not stated a claim for intentional discrimination.

Plaintiff alleges that Cigna designed the weight loss drug exclusion specifically to deny medically necessary prescription drugs to individuals with obesity.  (Compl. ¶ 76, 82–84.)  She alleges "on information and belief" that Cigna failed to conduct a cost-benefit analysis to determine whether all plans should cover prescription weight loss drugs and failed evaluate this exclusion to determine whether it complies with the ACA's non-discrimination requirements or is based on medical evidence.  (Comp. ¶¶ 78–80.)

The First Circuit has not settled on a standard for intentional discrimination claims under Section 504, but district courts have held that a plaintiff may show a discriminatory intent by alleging "deliberate indifference."  *See Lewis*, 2022 WL 17454078, at *6; *Fortin on behalf of TF v. Hollis Sch. Dist.*, 2017 WL 4157065, at *3 (D.N.H. Sept. 18, 2017).  Deliberate indifference in this context requires: (1) "knowledge that a harm to a federally protected right is substantially likely," and (2) the defendant "failed to act upon that likelihood."  *Walgreens*, 2024 WL 20063, at *2; *Lewis*, 2022 WL 17454078, at *6.  Plaintiff's allegations do not meet either prong of this standard.

Plaintiff has not plausibly alleged that Cigna knew that (1) obesity is a federally-protected disability; and (2) excluding coverage for prescription weight loss drugs for all plan participants was "substantially likely" to violate the ACA's non-discrimination provisions.  As discussed above, a medical diagnosis of obesity is not a *per se* disability under federal law. (Sec. I.A, *supra.*) In addition, there have been conflicting regulations and guidance from HHS as to whether the ACA non-discrimination provisions apply to third-party administrators of employer-sponsored health

14

plans, like Cigna is for the UMS Plan.[10]  It is therefore not plausible that Cigna knew that all individuals diagnosed with obesity have a federally-protected disability and that administering a plan exclusion for prescription weight loss drugs was "substantially likely" to violate the ACA.

Plaintiff's allegations are also too general to sufficiently plead deliberate indifference.  *See Walgreens*, 2024 WL 20063, at *2 (finding that allegations that Walgreens received complaints about potential disability discrimination were too general to sufficiently plead deliberate indifference).  *Walgreens* involved a Section 1557 claim alleging that Walgreens' dose and duration restrictions on opioid prescriptions unlawfully discriminated against chronic pain patients.  The Ninth Circuit found the plaintiff's allegations that Walgreens received customer complaints about pharmacies refusing to fill their prescriptions and a warning from the CDC about the potential impact of misapply CDC guidelines were "too general to support an inference that Walgreens knew its policy would specifically affect people with disabilities." *Id.*

The insufficient allegations in *Walgreens* were much more robust that the allegations in this case.  Plaintiff merely alleges "on information and belief" that Cigna failed to ensure it exclusion for prescription weight loss drugs complied with the ACA's anti-discrimination provisions.[11]  (Compl.  ¶¶ 66, 76.)  This allegation is far too general to show that Cigna knew that this plan term was substantially likely to specifically affect people with disabilities.  And, these kind of "on information and belief" allegations are not enough to plead a discrimination claim.

---

[10] *See generally,* 89 FR 37522, 37537-39 (discussing HHS rulemaking defining "health program or activity" and applicability to health insurance issuers).

[11] The Complaint cites *Schmitt v. Kaiser Found. Health Plan of Wash.*, 965 F.3d 945 (9th Cir. 2020)—in which the Ninth Circuit held that the ACA allows a claim for discriminatory benefit design.  *Id.* at 955.  But the *Schmitt* court did not conduct an analysis of whether the defendant (Kaiser) was deliberately indifferent in applying the exclusion at issue in that case.  More importantly, the *Schmitt* court found that the plaintiffs alleged no facts giving rise to an inference of intentional discrimination besides the exclusion itself.  *Id.*

*See Dunn v. City of Los Angeles*, 2017 WL 7726724, at *2 n.5 (C.D. Cal. Aug. 10, 2017) (court found individual plaintiffs failed to sufficiently plead intentional discrimination or deliberate indifference and failed to allege non-conclusory facts, finding "conclusory allegations made upon 'information and belief' are insufficient to state a claim"); *see also Cardigan Mountain Sch. v. N.H. Ins. Co.*, 787 F.3d 82, 86 (1st Cir. 2015) (recognizing the distinction between conclusory or "bald" allegations that should not be taken as true, and factual allegations that should be taken as true). Plaintiff therefore has not sufficiently pled intentional discrimination.

    **B.**    **Plaintiff has not stated a claim for proxy discrimination.**

    Plaintiff concedes that the UMS Plan's prescription weight loss drug exclusion is facially neutral and applies to at least two categories of plan participants – participants who are overweight and participants with obesity.[12]  Plaintiff claims, however, that this exclusion is a "a proxy for discrimination against plan enrollees diagnosed with obesity" – i.e. "weight loss" is a proxy for her alleged disability, obesity.  (Compl. ¶ 85, 89, 93.)  This theory also fails.

    The First Circuit has not addressed the standard for proxy discrimination.  Other courts, like the Ninth Circuit, have explained that "proxy discrimination arises when the defendant enacts a law or policy that treats individuals differently on the basis of seemingly neutral criteria that are so closely associated with the disfavored group that discrimination on the basis of such criteria is, constructively, facial discrimination against the disfavored group." *Schmitt*, 965 F.3d at 958.  The "crucial question is whether the proxy's 'fit' is 'sufficiently close' to make a discriminatory inference plausible." *Id.* at 959.  When evaluating this question in the context of an alleged discriminatory plan design, the court may look at "a given policy's disproportionate effect on disabled insureds (overinclusion), ability to service the needs of similar disabled insureds

---

[12] *See supra*, n.5.

(underinclusion), historical enactment, or targeted enforcement." *E.S. v. Regence BlueShield*, 2022 WL 279028, at *4 (W.D. Wash. Jan. 31, 2022). The Complaint does not address any of this.

Plaintiff has not pled any facts that show the prescription weight loss drug exclusion disproportionately affects Plan members with obesity (i.e. overinclusion). The Complaint does not include any allegations about the population of overweight plan participants who are eligible for prescription weight loss drug coverage, the percentage who are prescribed weight loss drugs, the percentage who seek coverage for prescription weight loss drugs, or how these factors compare to the needs and demand of the population of individuals diagnosed with obesity. Such deficiencies are fatal to Plaintiff's proxy discrimination claim. *See Regence BlueShield*, 2022 WL 279028, at *7–9 (rejecting proxy discrimination claim where plaintiff did not identify the total hearing loss population, the proportion of that population that was disabled and eligible for cochlear implants, the proportion that was disabled but ineligible for cochlear implants, or the proportion that was not disabled); *Walgreens*, 2024 WL 20063, at *1 (finding plaintiff failed to state claim for proxy discrimination because plaintiff did not allege facts about the proportion of people who would not be affected by the policy); *Schmitt*, 965 F.3d at 959–60 (same). [13]

Plaintiff tries to *suggest* a disproportionate impact on individuals diagnosed with obesity by alleging that "[w]hile some non-disabled enrollees may seek weight loss medications for treatment, such treatment is not considered medically necessary under Cigna's existing medical policy." (Compl. ¶ 89.) But courts have recognized this exact allegation is conclusory and should

---

[13] Plaintiff cites *Fuog v. CVS Pharmacy, Inc.*, 2022 WL 1473707 (D.R.I. May 10, 2022) ("*Fuog II*"), as support for the proxy discrimination claim. But the plaintiff in *Fuog II* alleged a "fit" by "support[ing] her pleading with reference to academic studies showing a reasonably strong correlation between disability and larger opioid prescriptions." *Id.* at *5. Plaintiff has not cited any study or information to show an analogous similar correlation here, and therefore *Fuog II* is distinguishable.

be rejected.  *See Regence BlueShield*, 2022 WL 279028, at *7–9 (rejecting conclusory allegations that "even if non-disabled insureds did indeed seek treatment, they would be denied coverage because such treatment would not be a 'medical necessity' and Regence's policy excludes treatments that are not medically necessary").

The Complaint also contradicts this allegation.  Plaintiff admits that, but for the exclusion, both overweight participants, who Plaintiff alleges are not disabled (Compl. ¶ 46), <u>and</u> participants with obesity can meet Cigna's coverage criteria for certain prescription weight loss drugs.  (*Id*. ¶ 89.)[14]  And, "not everyone with BMI over 30 will be diagnosed with obesity . . . and sometimes people with lower BMI may be diagnosed with obesity[.]" (*Id.* ¶ 50.)  Cigna's prescription drug policies for various weight loss drugs, including Zepbound and Wegovy, support medical necessity for individuals with a BMI of 30 or more, and less when combined with certain comorbidities.  (*Id.* at 89.)  Therefore, contrary to Plaintiff's claim, "non-disabled enrollees" – for example, someone with a BMI over 30, but not diagnosed with obesity – could meet the medical necessity criteria for a prescription weight loss drug.  So could overweight individuals with a BMI of 27 or more.  Thus, Plaintiff's contention that these drugs would only be prescribed for people with obesity is not plausible.

Plaintiff's proxy discrimination claim also fails because the "weight loss" proxy is underinclusive.  The UMS Plan provides medical benefits for medical and surgical treatments for clinically severe obesity.  Courts have recognized that just as "the benefit . . . cannot be defined in a way that effectively denies otherwise qualified disabled individuals the meaningful access to which they are entitled . . . a section 1557 plaintiff cannot define the benefit so narrowly as to require an insurer to curate coverage for each individual's health care needs." *Schmitt*, 965 F.3d at

---

[14] Cigna's relevant coverage policies confirm this.  (Compl, Ex. 1; *supra* n.2.)

955, 959 (explaining the ACA "does not guarantee individually tailored health care plans"); *see also Lockheed Corp. v. Spink*, 517 U.S. 882, 887 (1996) (explaining "[n]othing in ERISA requires employers to establish employee benefits plans" and "[n]or does ERISA mandate what kind of benefits employers must provide if they choose to have such a plan"); *Alexander v. Choate*, 469 U.S. 287, 303 (1985) (explaining "Medicaid programs" "do not guarantee that each recipient will receive that level of health care precisely tailored to his or her particular needs"). Here, Plaintiff has pled no facts about what percentage of plan members would seek coverage for medical or surgical treatments as opposed to prescription drugs, or if this Plan design serves the needs of those members. Instead, "[w]e are left to guess what that proportion might be," which is enough to merit dismissal. *Schmitt*, 965 F.3d at 959.

Ultimately, Plaintiff has not alleged that the neutral criteria (i.e., the prescription drug weight loss exclusion) is "so closely" drawn with the alleged disfavored group (plan members diagnosed with obesity) that Cigna is engaged in "constructively[] facial discrimination[.]" Thus, Plaintiff has not adequately pled proxy discrimination. *See id.* at 958, 960 (finding similarly deficient allegations failed to state claims for proxy discrimination).

### C.      Plaintiff has not stated a claim for disparate impact discrimination.

Plaintiff alleges in the alternative that even if the exclusion is "facially neutral" and not a form of "proxy" discrimination, it has a disparate impact on Cigna plan members diagnosed with obesity and denies them of "meaningful access" to prescription medication for obesity and the administrative appeal and external review process. (Compl. ¶ 91.) This claim also fails.

*First*, "[a] facially neutral policy may support a disparate impact claim based on lack of meaningful access when the policy has the effect of denying meaningful access to services to people with disabilities, but the 'services . . . remain open and easily accessible to others.'" *Walgreens*, 2024 WL 20063, at *2. Where a policy "applies to everyone, regardless of

19

their disability status" as the prescription drug weight loss exclusion does, then the "alleged policy does not deny people with a disability meaningful access to a service that remains open and easily accessible to others." *Id.* [15]  Thus, Plaintiff's disparate impact claim fails.

*Second*, even if Plaintiff's disparate impact claim is taken at face value, it fails for lack of factual support.  Indeed, to state a disparate impact claim Plaintiff must show that it "falls more harshly on one group than another[.]"  *Fuog v. CVS Pharmacy, Inc.*, 2021 WL 4355402, at *4 (D.R.I. Sept. 24, 2021) ("*Fuog I*") (alternation in original).  The allegations in the Complaint show that the prescription drug weight loss exclusion could apply to both overweight participants and participants with obesity and Plaintiff provides "no basis to assess or even estimate what portion of those affected by [the] alleged policies are disabled within the meaning of the ADA." *Id.*  Thus, it is devoid of "well-pleaded facts to support the degree of the disparate impact alleged, [and] Plaintiff's meaningful access theory must fail."  *Id.* at *5.

## <u>CONCLUSION</u>

For reasons stated above, Cigna respectfully requests that this Court dismiss Plaintiff's Complaint.

---

[15] The Complaint cites *Lovell v. Chandler*, 303 F.3d 1039 (9th Cir. 2002), a case in which people were denied access to a program they financially qualified for but were excluded because they were disabled and were excluded from a second program because they could not qualify financially.  *Id.* at 1054.  But in this case, there is no such exclusion on the basis of disability, the plan exclusion at issue applies to all Cigna plan members who seek coverage for medication for weight loss, irrespective of whether they have obesity.

Dated: August 26, 2024                    Respectfully submitted,

By:    _/s/ Byrne J. Decker_
       Byrne J. Decker
       **OGLETREE, DEAKINS, NASH,**
       **SMOAK & STEWART, P.C.**
       Two Monument Square, Suite 703
       Portland, ME 04101
       Telephone: (207) 387-2957
       Facsimile:  (207) 387-2986
       b.decker@ogletree.com

       Richard W. Nicholson, Jr.*
       Richard Diggs*
       **MᴄDERMOTT WILL & EMERY LLP**
       One Vanderbilt Avenue
       New York, NY 10017-3852
       Telephone: (212) 547-5400
       Facsimile:  (212) 547-5444
       rnicholson@mwe.com
       rdiggs@mwe.com

       *Admitted _Pro Hac Vice_

       Brett J. Boskiewicz*
       **MᴄDERMOTT WILL & EMERY LLP**
       200 Clarendon Street, Floor 58
       Boston, MA 02116-5021
       Telephone: (617) 535-5989
       Facsimile:  (617) 535-3800
       bboskiewicz@mwe.com

       *Admitted _Pro Hac Vice_

       _Attorneys for Defendant Cigna Health and_
       _Life Insurance Company_

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on August 26, 2024, I electronically filed the foregoing **Motion to Dismiss Plaintiff's Complaint and Incorporated Memorandum of Law** with the Clerk of the Court using the Court's CM/ECF system, which will send notice of the filing to counsel of record.

*/s/ Byrne J. Decker*
Byrne J. Decker