# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MAINE

JAMIE WHITTEMORE, on her own behalf
and on behalf of similarly situated others,

        *Plaintiff*,

    v.

CIGNA HEALTH AND LIFE INSURANCE
COMPANY,

        *Defendant*.

Case No. 2:24-cv-00206-LEW-JCN

**PLAINTIFF JAMIE WHITTEMORE'S
OBJECTIONS AND MEMORANDUM OF LAW IN OPPOSITION TO
DEFENDANT CIGNA HEALTH AND LIFE INSURANCE COMPANY'S
MOTION TO DISMISS**

## <u>TABLE OF CONTENTS</u>

TABLE OF CONTENTS.................................................................................................. i

TABLE OF AUTHORITIES ........................................................................................... ii

INTRODUCTION ........................................................................................................... 1

SUMMARY OF RELEVANT ALLEGATIONS............................................................. 3

ARGUMENT ................................................................................................................... 5

   **I.**   Plaintiff Sufficiently Alleges That She Has a Disability. ................................. 6

      **A.**   Plaintiff's Obesity Is an Impairment................................................ 6

         **1.**   Obesity Is a Physiological Disorder or Condition............................ 6

         **2.**   Obesity Is an Impairment Regardless of Its Cause.......................... 8

      **B.**   Plaintiff's Obesity Substantially Limits Her Major Life Activities........................ 10

         **1.**   "Substantially Limits" is Evaluated Under a Lenient Standard. ..................... 10

         **2.**   Obesity Is Substantially Limiting When It Requires Prescription Medicine. .. 11

         **3.**   Plaintiff Alleges Obesity Substantially Limits Her Major Life Activities. ...... 13

  **II.**   Plaintiff States Claims for Discrimination. ........................................................ 14

      **A.**   Plaintiff States a Claim For Intentional Discrimination. ........................................ 14

      **B.**   Plaintiff States a Claim for Proxy Discrimination. ................................................. 16

         **1.**   Plaintiff Need Not Prove Proxy Discrimination Using Statistics.................... 17

         **2.**   Plaintiff Has Plausibly Pled Proxy Discrimination. ........................................ 18

         **3.**   Additional Allegations Support Plaintiff's Proxy Discrimination Claim. ....... 19

      **C.**   Plaintiff States a Claim for Disparate Impact Discrimination. ............................... 20

CONCLUSION............................................................................................................... 20

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Andrews v. Ohio*,
  104 F.3d 803 (6th Cir. 1997) ................................................................. 9

*Arroyo-Ruiz v. Triple-S Mgmt. Grp.*,
  206 F. Supp. 3d 701 (D.P.R. 2016) ............................................. 11, 12, 14

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) ................................................................................ 5

*BNSF Ry. Co. v. Feit*,
  365 Mont. 359, 281 P.3d 225 (2012) ..................................................... 9

*Bolden-Hardge v. Off. of Cal. State Controller*,
  63 F.4th 1215 (9th Cir. 2023) ............................................................... 20

*Bowers v. NCAA*,
  563 F. Supp. 2d 508 (D.N.J. 2008) ....................................................... 19

*Cardigan Mountain Sch. v. N.H. Ins. Co.*,
  787 F.3d 82 (1st Cir. 2015) ................................................................... 16

*Carreras v. Sajo, Garcia & Partners*,
  596 F.3d 25 (1st Cir. 2010) ................................................................... 10

*Cavanagh v. IDEXX Lab'ys, Inc.*,
  No. 2:23-cv-00273-NT, 2024 WL 2724195 (D. Me. May 28, 2024) ............................... 12, 14

*City of Los Angeles, Calif. v. Patel*,
  576 U.S. 409 (2015) .............................................................................. 20

*Cook v. State of R.I. Dept. of Mental Health, Retardation, and Hosp.*,
  10 F.3d 17 (1st Cir. 1993) ......................................................... 2, 7, 8, 9

*CRC Health Grp., Inc. v. Town of Warren*,
  No. 2:11-cv-196-DBH, 2014 WL 2444435 (D. Me. Apr. 1, 2014) ......................... 14

*Davis v. Commonwealth Election Comm'n*,
  844 F.3d 1087 (9th Cir. 2016) .............................................................. 17

*Davis v. Guam*,
  932 F.3d 822 (9th Cir. 2019) ................................................................ 19

*Davis v. New York*,
  No. 1:23-cv-00116-JLS-JJM, 2023 WL 10351576 (W.D.N.Y. Dec. 20, 2023) ................. 13

*Doe v. CVS Pharmacy, Inc.*,
  982 F.3d 1204 (9th Cir. 2020) ................................................................ 5

*Dunn v. City of Los Angeles*,
  No. 14-cv-8327-CBM-MRW, 2017 WL 7726724 (C.D. Cal. Aug. 10, 2017) ............... 16

*E.E.O.C. v. Res. for Hum. Dev., Inc.*,
  827 F. Supp. 2d 688 (E.D. La. 2011) ....................................................... 8

*E.E.O.C. v. Steamship Clerks Union, Loc. 1066,*
    48 F.3d 594 (1st Cir. 1995) ........................................................................ 20

*E.S. v. Regence BlueShield,*
    No. 17-cv-01609-RAJ, 2024 WL 1173805 (W.D. Wash. Mar. 19, 2024) ................. 16, 17, 19

*E.S. v. Regence BlueShield,*
    No. 2:17-cv-01609-RAJ, 2022 WL 279028 (W.D. Wash. Jan. 31, 2022)................. 17

*Franchi v. New Hampton Sch.,*
    656 F. Supp. 2d 252 (D.N.H. 2009).......................................................... 14

*Francis v. Meriden,*
    129 F.3d 281 (2d Cir. 1997) ........................................................................ 9

*Friends of Merrymeeting Bay v. NextEra Energy Res. LLC,*
    No. 2:11-cv-38-GZS, 2011 WL 4025508 (D. Me. Sept. 9, 2011).................... 14

*Frith v. Whole Foods Mkt., Inc.,*
    38 F.4th 263 (1st Cir. 2022).................................................................... 14

*Fuog v. CVS Pharmacy, Inc.,*
    No. 20-cv-337-WES, 2022 WL 1473707 (D.R.I. May 10, 2022) .................... 16, 17

*Garcia-Hicks v. Vocational Rehab. Admin.,*
    148 F. Supp. 3d 157 (D.P.R. 2015)........................................................... 10

*Griffin v. United Parcel Serv., Inc.,*
    661 F.3d 216 (5th Cir. 2011) ................................................................... 10

*Harding v. Cianbro Corp.,*
    436 F. Supp. 2d 153 (D. Me. 2006) ........................................................... 6

*Hope v. City of Long Beach,*
    No. 04-cv-4249-DT-RZX, 2005 WL 6009954 (C.D. Cal. Aug. 15, 2005) ........... 15

*Hussey v. City of Cambridge,*
    No. 21-cv-11868-AK, 2022 WL 6820717 (D. Mass. Oct. 11, 2022) .................. 12

*Int'l Union v. Johnson Controls,*
    499 U.S. 187 (1991)................................................................................. 15

*James D. Julia, Inc. v. Dan Morphy Auctions, LLC,*
    No. 1:21-cv-00025-JAW, 2021 WL 2535941 (D. Me. June 21, 2021) ................... 12

*Johnson v. Whole Foods Mkt. Grp., Inc.,*
    657 F. Supp. 3d 158 (D. Me. 2023) ..................................................... 11, 14

*Kadel v. Folwell,*
    100 F.4th 122 (4th Cir. 2024) ................................................................. 20

*Kane v. VSI Meter Servs., Inc.,*
    723 F. Supp. 2d 268 (D. Me. 2010) .......................................................... 14

*Kaufman v. CVS Caremark Corp.,*
    836 F.3d 88 (1st Cir. 2016)..................................................................... 6, 8

*King v. Burwell*,
   576 U.S. 473 (2015).................................................................................................. 9

*Krocka v. City of Chicago*,
   203 F.3d 507 (7th Cir. 2000) ................................................................................... 8

*López-Santiago v. Med Centro, Inc.*,
   No. 23-cv-1206-PAD, 2023 WL 8809479 (D.P.R. Dec. 20, 2023)...................... 9, 13

*Lovell v. Chandler*,
   303 F.3d 1039 (9th Cir. 2002) ............................................................................... 18

*Lynch v. Freeman*,
   817 F.2d 380 (6th Cir. 1987) ................................................................................. 20

*Mark H. v. Lemahieu*,
   513 F.3d 922 (9th Cir. 2008) ................................................................................. 15

*McCarthy v. Mass. Gen. Brigham Inc.*,
   No. 24-cv-10184-DJC, 2024 WL 3416025 (D. Mass. July 15, 2024)..................... 10

*Mendez v. Brown*,
   311 F. Supp. 2d 134 (D. Mass. 2004) ............................................................ 7, 9, 14

*Morriss v. BNSF Ry. Co.*,
   817 F.3d 1104 (8th Cir. 2016) ............................................................................ 9, 10

*Nedder v. Rivier Coll.*,
   908 F. Supp. 66 (D.N.H. 1995)............................................................................ 7, 9

*Pac. Shores Prop., LLC v. City of Newport Beach*,
   730 F.3d 1142 (9th Cir. 2013) .......................................................................... 16, 18

*Palmquist v. Shinseki*,
   808 F. Supp. 2d 322 (D. Me. 2011) .................................................................. 14, 15

*Perez-Rosario v. Hambleton Grp.*,
   No. 08-cv-1459-JAF, 2009 WL 1076701 (D.P.R. Apr. 21, 2009) .......................... 8

*Provencher v. Bimbo Bakeries USA, Inc*,
   No. 2:22-cv-198, 2023 WL 6050398 (D. Vt. Aug. 7, 2023) ................................. 13

*Ramos-Echevarria v. Pichis, Inc.*,
   659 F.3d 182 (1st Cir. 2011).................................................................................. 10

*Rice v. Cayetano*,
   528 U.S. 495 (2000)................................................................................................ 18

*Richardson v. Chicago Transit Auth.*,
   926 F.3d 881 (7th Cir. 2019) ................................................................................... 9

*Roman-Martinez v. Potter*,
   550 F. Supp. 2d 270 (D.P.R. 2008)......................................................................... 8

*Schmitt v. Kaiser Found. Health Plan of Wash.*,
   965 F.3d 945 (9th Cir. 2020) ........................................................... 1, 5, 15, 16, 17

*Schmitt v. Kaiser Found. Health Plan of Wash.*,
 No. 17-c-1611-RSL, Pls' Opp. Br. at 12–15, ECF No. 75 (W.D. Wash. April 12, 2021);
 2022 WL 20356061 (W.D. Wash. Aug. 4, 2022) ...................................................................... 18

*Shine v. N.Y.C. Hous. Auth.*,
 No. 19-cv-04347-RA, 2020 WL 5604048 (S.D.N.Y. Sept. 18., 2020) .................................... 11

*Smith v. Maine Sch. Admin. Dist. No. 6*,
 No. 00-284-P-C, 2001 WL 420361 (D. Me. Apr. 24, 2001) ................................................... 16

*Smith v. Walgreens Boots All., Inc.*,
 No. 20-cv-05451-CRB, 2021 WL 3861451 (N.D. Cal. Aug. 30, 2021)............................ 12, 13

*Smith v. Walgreens Boots All., Inc.*,
 No. 22-16468, 2024 WL 20063 (9th Cir. Jan. 2, 2024)........................................................... 19

*Sutton v. United Air Lines, Inc.*,
 527 U.S. 471 (1999)................................................................................................................ 10

*T.S. v. Heart of Cardon, LLC*,
 43 F.4th 737 (7th Cir. 2022) ................................................................................................. 1, 5

*Taylor v. Burlington N. R.R. Holdings, Inc.*,
 193 Wash.2d 611, 444 P.3d 606 (2019) ................................................................................... 9

*Tirrell v. Edelblut*,
 No. 24-cv-251-LM-TSM, 2024 WL 4132435 (D.N.H. Sept. 10, 2024)................................... 17

*Valtierra v. Medtronic, Inc.*,
 No. 17-15282, Brief of EEOC as Amicus Curiae,
 2018 WL 6011412 (9th Cir. Nov. 13, 2018) ........................................................................... 10

*Wall v. Lubelczyk*,
 No. 17-2081, 2018 WL 11211423 (1st Cir. Oct. 17, 2018)....................................................... 5

**Statutes**

29 U.S.C. §705(20)(B) ................................................................................................................... 6

42 U.S.C. §12102(1) ...................................................................................................................... 6

42 U.S.C. §12102(2)(A) ............................................................................................................ 6, 10

42 U.S.C. §12102(2)(B) ............................................................................................................... 11

42 U.S.C. §12102(4) ...................................................................................................................... 6

42 U.S.C. §12201(c) ...................................................................................................................... 5

42 U.S.C. §18022(b) ...................................................................................................................... 5

42 U.S.C. §18022(b)(1) ................................................................................................................. 5

42 U.S.C. §18116 ....................................................................................................................... 1, 3

42 U.S.C. §18116(a) ...................................................................................................................... 5

**Regulations**

29 C.F.R. §1630.1(c)(4) ..................................................................................... 6

29 C.F.R. §1630.2(h)(1) ..................................................................................... 6

29 C.F.R. §1630.2(j)(1) ................................................................................. 6, 11

29 C.F.R. App. §1630.2(h) ................................................................................ 8

45 C.F.R. §156.125(a) ...................................................................................... 5

45 C.F.R. §92.101(a)(1) .................................................................................... 5

**Other Authorities**

81 Fed. Reg. 31405 ........................................................................................ 27

81 Fed. Reg. 31429 ........................................................................................ 20

*Adult Obesity Facts,* CDC (May 14, 2024), available at:
    https://www.cdc.gov/obesity/php/data-research/adult-obesity-facts.html
    (accessed Sept. 22, 2024) ......................................................................... 16

*Am. Soc. for Metabolic and Bariatric Surgery,* April 2020, available at:
    https://www.soard.org/article/S1550-7289%2819%2931160-8/abstract
    (accessed Sept. 23, 2024) ......................................................................... 25

Am. Soc. for Metabolic and Bariatric Surgery, *Disease of Obesity,* available at:
    https://asmbs.org/patients/disease-of-obesity/
    (accessed Sept. 16, 2024) ........................................................................... 9

AMA Policy H0440.842, available at:  https://policysearch.ama-assn.org/policyfinder/
    (accessed Sept. 16, 2024) ........................................................................ 7, 9

Bray, Kim, Wilding, *Obesity:  A Chronic Relapsing Progressive Disease Process,*
    World Obesity Federation (2017), available at:
    https://atlibrary.wiley.com/doi/epdf/10.1111/obr.12551
    (accessed Sept. 16, 2024) ............................................................. 7, 9, 15, 18

Djalalinia, Qorbani, Peykari, Kelishadi, *Health Impacts of Obesity,*
    Pak J Med Sci. (2015), available at:
    https://www.ncbi.nlm.nih.gov/pmc/articles/PMC4386197
    (accessed Sept. 16, 2024) ........................................................................... 9

EEOC Compliance Manual §902.2 ................................................................... 11

FDA News Release, *FDA Approves New Drug Treatment* (June 4, 2021), available at:
    https://www.fda.gov/news-events/press-announcements/fda-approves-new-drug-treatment-
    chronic-weight-management-first-2014 (accessed Sept. 16, 2024) ..................... 8, 9

FDA News Release, *FDA Approves New Medication* (Nov. 8, 2023), available at:
    https://www.fda.gov/news-events/press-announcements/fda-approves-new-medication-
    chronic-weight-management (accessed Sept. 16, 2024) ................................. 8, 9

*Prescriptions for Popular Diabetes and Weight-Loss Drugs…,*
    CNN (Sept. 27, 2023), available at:  https://www.cnn.com/2023/09/27/health/semaglutide-

equitable-access/index.html
(accessed Sept. 16, 2024) ................................................................................................. 16

The Merck Manual of Diagnosis and Therapy 981 (Robert Berkow ed., 16th ed. 1992) ............ 11

WHO, *Obesity and Overweight* (March 2024),
available at:  https://www.who.int/news-room/fact-sheets/detail/obesity-and-
overweight#:~:text=Key%20facts,years%20and%20older)%20were%20overweight
(accessed Sept. 16, 2024)............................................................................................... 9

## INTRODUCTION

Before the Affordable Care Act ("ACA") health insurance companies could engage in "fair" discrimination, designing health benefit plans that intentionally excluded medically necessary care for individuals with disabilities. The ACA ended that practice for insurers, like Defendant Cigna, that voluntarily accept federal financial assistance. Under the ACA's 42 U.S.C. §18116 ("Section 1557"), any health insurer accepting federal funds must ensure its benefit plans do not discriminate against people with disabilities:

> Section 1557 "outlaws discrimination" on enumerated grounds "by healthcare entities receiving federal funds." *Cummings v. Premier Rehab Keller, P.L.L.C.*, 142 S. Ct. 1562, 1569, 212 L. Ed. 2d 552 (2022). By linking the prohibition to federal funding, the provision seeks to prevent federal resources from supporting discriminatory conduct; and by authorizing a private right of action, it seeks to provide individuals a means of protecting themselves from such conduct

*T.S. v. Heart of Cardon, LLC*, 43 F.4th 737, 741 (7th Cir. 2022). *See also Schmitt v. Kaiser Found. Health Plan of Wash.*, 965 F.3d 945, 955 (9th Cir. 2020) ("*Schmitt I*") (The ACA "imposes an affirmative obligation not to discriminate in the provision of health care—in particular, to consider the needs of disabled people and not design plan benefits in ways that discriminate against them.").

Insurers faced a clear choice:  reject federal funds and retain the ability to discriminate in plan design or accept federal funding and comply with Section 1557. Cigna chose the latter. Despite this choice, it continues to design and implement plans that discriminate against individuals diagnosed with obesity. Cigna's health plan (the "Plan") *facially* discriminates:

> Payment for the following is specifically excluded… For medical and surgical services intended primarily for the treatment or control of *obesity*.

It also excludes:

> any product dispensed for the purpose of appetite suppression (anorectics) or weight loss.

ECF No. 1-3, pp. 58–60 (emphasis added).  By excluding all prescription medications to treat obesity, Cigna discriminates against enrollees diagnosed with obesity.  *Cook v. State of R.I. Dept. of Mental Health, Retardation, and Hosp.*, 10 F.3d 17, 23–24 (1st Cir. 1993) (Obesity is an impairment, and therefore can be a disability).

Cigna argues that Plaintiff Jamie Whittemore is not disabled under the ACA because she does not allege a physiological impairment ***other*** than obesity that substantially limits major life activities. Cigna also contends Plaintiff fails to sufficiently allege intentional, proxy, and disparate impact discrimination. Cigna is wrong on all counts.

***First***, obesity is a disability under the ACA since it is a physiological impairment that substantially limits major life activities and when it requires medical treatment. That obesity is an impairment is well-established by leading medical authorities, including the American Medical Association ("AMA"), the American Association of Clinical Endocrinologists, the American College of Cardiology, the American College of Surgeons, and the Food and Drug Administration ("FDA"), among others. All have concluded obesity is a disease, *i.e.,* a physiological condition in and of itself. The First Circuit agrees. In *Cook,* the court recognized obesity can be an impairment without another underlying condition, echoing the same conclusion of the Equal Employment Opportunity Commission ("EEOC"). *Cook*, 10 F.3d at 23–24. This is also consistent with the purpose of the ACA—to expand health coverage and eliminate discriminatory barriers to coverage, including for people with disabilities.

***Second***, Ms. Whittmore sufficiently alleges that her obesity significantly impairs her major life activities, such as walking, standing, and sleeping. She requires medically necessary prescription medication to manage her condition, consistent with Cigna's medical policies. ECF

Nos. 1-1, 1-2. Courts recognize that an impairment requiring medical intervention supports the reasonable inference that an impairment substantially limits major life activities.

*Third*, Cigna's exclusion of prescription drugs for obesity directly discriminates against those diagnosed with the condition. The exclusion is explicit in Cigna's plan documents, demonstrating intentional discrimination by design. Moreover, the circumstances surrounding Cigna's plan history and its refusal to adjust benefits in response to the ACA show deliberate indifference to the discriminatory impact of its policy.

*Fourth*, Cigna's "weight loss" exclusion is a form of proxy discrimination.  The "fit" between people denied "weight loss medications" who would otherwise be eligible for coverage and disability is quite close. The exclusion predominantly impacts people who would have been covered under the Cigna medical policy, but for the exclusion:  individuals with a BMI of 30 or more or with a BMI of 27–29 and coexisting conditions, *i.e.,* overwhelmingly people with obesity.

*Finally,* Plaintiff has stated a claim for disparate impact discrimination. People diagnosed with obesity do not receive prescription drug treatment for their health condition, but others have access to medically necessary medications to treat their conditions. The law does not require statistics at this stage, particularly where the discriminatory impact is obvious:  Failing to cover anti-obesity medication will impact people with obesity more harshly than those without.

Accordingly, the Court should deny Cigna's motion and allow this case to proceed.

## SUMMARY OF RELEVANT ALLEGATIONS

Cigna is a health plan that accepts federal financial assistance.  It is subject to the ACA's anti-discrimination law, known as Section 1557.  *See* 42 U.S.C. §18116. The ACA requires Cigna to design and administer health benefits in a non-discriminatory manner in all activities. (Compl. ¶¶9.) When the ACA passed, Cigna was required to consider whether the Obesity Exclusion was

the result of disability discrimination or justified using the same medical and scientific standards applied to all other benefits. (*Id.* ¶66.) Plaintiff alleges Cigna failed to engage in this analysis. (*Id.*)

Cigna's failure caused Plaintiff and the proposed class harm when new medications were developed that could effectively and appropriately treat obesity. Semaglutide 1 (marketed as Ozempic and Wegovy) and tirzepatide (marketed as Zepbound), as well as other prescription medications, effectively treat obesity. (*Id.* ¶3.) Their medical efficacy is well-established.  Even Cigna's internal policies conclude they are medically necessary and effective. (*Id.* ¶¶3–4.) Yet, Cigna continues to design and administer plans that exclude coverage whenever these medications are sought to treat obesity. (*Id.* ¶5.)

Specifically, Cigna's Plan excludes all "medical and surgical services intended primarily for the treatment or control of obesity" with a limited exception for bariatric surgery (the "Obesity Exclusion"). (*Id.* ¶11.) The Plan contains a second exclusion of any medication dispensed for the purpose of weight loss. (*Id.*) The Plan also states that all general exclusions "also apply to the benefits for Prescription Drug Products." (*Id.*) Taken together, these exclusions eliminate all coverage of prescription medications to treat obesity. But the Plan generally covers medications that appear on the Prescription Drug List for conditions other than obesity. (*Id.* ¶13.) Cigna's list covers Wegovy and Zepbound, but only when there is no Obesity Exclusion. (*Id.* ¶14.)

Plaintiff Jamie Whittemore is enrolled in the Plan. (*Id.* ¶7.) Cigna discriminated against her because—though she has diagnosed obesity, a disabling condition that requires medically necessary treatment with prescription medications—Cigna's Plan excluded medically necessary medications prescribed to treat her obesity. (*Id.*) "But for" Cigna's application of the Obesity Exclusion, Ms. Whittemore's medications would have been covered. (*Id.* ¶16.)

# ARGUMENT[1]

The ACA prohibits discrimination in plan design and administration. 42 U.S.C. §18116(a); *see* 42 U.S.C. §18022(b)(4)(B)–(C); 45 C.F.R. §156.125(a) ("An insurer does not provide [essential health benefits] if its benefit design, or the implementation of its benefit design, discriminates based on… disability …or other health conditions."); 45 C.F.R. §92.101(a)(1) (prohibiting discrimination "under any health program or activity operated by a covered entity."). It requires plans to "cover prescription drugs as an 'essential health benefit.'" *Doe v. CVS Pharmacy, Inc.*, 982 F.3d 1204, 1210 (9th Cir. 2020) (quoting 42 U.S.C. §18022(b)(1)(F)). The ACA incorporates the nondiscrimination "grounds" and "enforcement mechanisms" of, *inter alia,* the Rehabilitation Act.[2] 42 U.S.C. §18116(a). Thus, the ACA provides a cause of action to those "subjected, based on their disabilities, to discrimination by healthcare entities." *T.S.*, 43 F.4th at 741 (ACA discrimination claim against plan for exclusion of autism treatment allowed to proceed).

To plead disability discrimination under the ACA, a plaintiff must allege:  (1) she has a disability; (2) she is otherwise qualified to receive the benefit in dispute; (3) she was denied the benefit by reason of her disability; and (4) the defendant is a covered entity receiving federal financial assistance. *Schmitt I,* 965 F.3d at 954. Cigna only challenges whether (I) Plaintiff, who is diagnosed with obesity and prescribed medications for treatment, has established she is disabled; and (II) she has adequately pled that Cigna's coverage denial was discrimination. She has.

---

[1] A complaint must include allegations that, if proven true, state a plausible claim for relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–58 (2007). A court must accept all well-pleaded allegations as true, drawing all reasonable inferences in plaintiff's favor. *Wall v. Lubelczyk*, No. 17-2081, 2018 WL 11211423, at *1 (1st Cir. Oct. 17, 2018).

[2] Importantly, the ACA did not incorporate the "grounds" and "enforcement mechanisms" of the Americans with Disabilities Act ("ADA") because the ADA contains an insurance "safe harbor" that permits pre-existing condition exclusions and other practices outlawed by the ACA. *See* 42 U.S.C. §12201(c).

## I.     Plaintiff Sufficiently Alleges That She Has a Disability.

The ACA does not define "disability," but the Rehabilitation Act does.  It incorporates the ADA's definition:  a disability is "a physical or mental impairment that substantially limits one or more major life activities[.]" 42 U.S.C. §12102(1); 29 U.S.C. §705(20)(B). "Major life activities" include walking, sleeping, standing, lifting, bending, etc. 42 U.S.C. §12102(2)(A).  In 2008, Congress amended the ADA to expand the definitions of "disability" and "substantially limit" so that both would be "construed in favor of broad coverage of individuals." 42 U.S.C. §12102(4)(A)–(B). "The primary purpose of the [amendment] is to make it easier for people with disabilities to obtain protection under the ADA." 29 C.F.R. §1630.1(c)(4). The term "substantially limits" is meant to be a lenient standard. 29 C.F.R. §1630.2(j)(1).

### A.     Plaintiff's Obesity Is an Impairment.

#### 1.     Obesity Is a Physiological Disorder or Condition.

"Impairment" includes:  "[a]ny physiological disorder or condition… affecting one or more body systems, such as neurological, musculoskeletal,… respiratory,… cardiovascular, reproductive, digestive,… immune, circulatory, hemic, lymphatic, skin, and endocrine." 29 C.F.R. §1630.2(h)(1); *see Harding v. Cianbro Corp.*, 436 F. Supp. 2d 153, 171–72 (D. Me. 2006). Obesity meets this definition. AMA Policy H0440.842 ("[O]besity [i]s a disease state with multiple pathophysiological aspects requiring a range of interventions to advance obesity treatment[.]") (Compl. ¶36);[3] *see* Bray, Kim, Wilding, *Obesity:  A Chronic Relapsing Progressive Disease Process,* World Obesity Federation (2017) (near universal recognition of obesity as a disease) (Compl. ¶¶38, 43).[4] The medications at issue here "work[ ] by mimicking a hormone called

---

[3] Courts may consider articles cited in a complaint. *See Kaufman v. CVS Caremark Corp.*, 836 F.3d 88 (1st Cir. 2016). The AMA Policy is available at:  https://policysearch.ama-assn.org/policyfinder/ (accessed Sept. 16, 2024).

[4] Available at:  https://atlibrary.wiley.com/doi/epdf/10.1111/obr.12551 (accessed Sept. 16, 2024).

glucagon-like peptide-1 (GLP-1) that targets areas of the brain that regulate appetite and food intake." FDA News Release, *FDA Approves New Drug Treatment* (June 4, 2021) (Compl. ¶56);[5] *see* FDA News Release, *FDA Approves New Medication* (Nov. 8, 2023) (same for Zepbound) (Compl. ¶59).[6] Obesity is physiological.

The First Circuit has confirmed that obesity can be an impairment. *Cook*, 10 F.3d at 23; *see Mendez v. Brown,* 311 F. Supp. 2d 134, 141 (D. Mass. 2004) (denying motion to dismiss Rehabilitation Act claim where plaintiff alleged she was obese without an underlying condition); *see also Nedder v. Rivier Coll.*, 908 F. Supp. 66, 74–75 (D.N.H. 1995) (citing *Cook* to assume morbid obesity constitutes an impairment). Cigna claims *Cook* is somehow inapplicable because, there, "the jury did not specify whether it found that the plaintiff's severe obesity was a physical impairment or was regarded as a physical impairment." (Def. Br. at 9.) But that is irrelevant. As explained in *Cook*, "the jury could plausibly have found that plaintiff had a physical impairment[.]" 10 F.3d at 23. True, in *Cook*, the **evidence** showed obesity is a "physiological disorder involving a dysfunction of both the metabolic system and the neurological appetite-suppressing signal system, capable of causing adverse effects…." *Id.* But this case is just at the pleadings stage. Plaintiff adequately alleges that obesity is a physiological metabolic disorder. (Compl. ¶¶35–47.)

Moreover, since *Cook*, a medical consensus has emerged, with the AMA, FDA, and numerous other medical associations recognizing obesity as a physiological condition. AMA Policy H0440.842, *supra* n.3; Bray, *supra* n.4; FDA articles, *supra* n.5–6; WHO, *Obesity and*

---

[5] Available at: https://www.fda.gov/news-events/press-announcements/fda-approves-new-drug-treatment-chronic-weight-management-first-2014 (accessed Sept. 16, 2024).

[6] Available at: https://www.fda.gov/news-events/press-announcements/fda-approves-new-medication-chronic-weight-management (accessed Sept. 16, 2024).

7

*Overweight* (March 2024);[7] Am. Soc. for Metabolic and Bariatric Surgery, *Disease of Obesity*;[8] *see also* Djalalinia, Qorbani, Peykari, Kelishadi, *Health Impacts of Obesity*, Pak J Med Sci. (2015).[9] Plaintiff's Complaint alleges and cites to this consensus. (Compl. ¶¶35–47.) Obesity is not simply a state of being overweight. (*Id.* ¶46.) It is a medically diagnosed condition—a metabolic condition—impairing various bodily functions. (*Id.* ¶45.) *Krocka v. City of Chicago*, 203 F.3d 507, 512 (7th Cir. 2000) ("[M]edically diagnosed… conditions are 'impairments' under the ADA.") (citation omitted); *Roman-Martinez v. Potter,* 550 F. Supp. 2d 270, 278 (D.P.R. 2008) (same). At this stage, that is enough. *See, e.g., Kaufman*, 836 F.3d at 96.

## 2. Obesity Is an Impairment Regardless of Its Cause.

"The Rehabilitation Act contains no language suggesting that its protection is linked to *how* an individual became impaired[.]" *Cook*, 10 F.3d at 24 (emphasis added); *see Perez-Rosario v. Hambleton Grp.*, No. 08-cv-1459-JAF, 2009 WL 1076701, at *3 (D.P.R. Apr. 21, 2009) (following *Cook*: a "jury can reasonably find that obesity is a physical impairment[.]"); *see also E.E.O.C. v. Res. for Hum. Dev., Inc.*, 827 F. Supp. 2d 688, 693 (E.D. La. 2011). EEOC's guidance explains that an "'impairment' does not include physical characteristics such as eye color, hair color…, or height, weight… that are within 'normal' range and are not the result of a physiological disorder." 29 C.F.R. App. §1630.2(h). When weight falls outside the "normal" range, it may be an impairment. *Id.* And when an individual's condition is *clinically diagnosed* as obesity, it is an impairment. *See* EEOC Compliance Manual §902.2 ("severe obesity, [ ] defined as body weight more than 100% over the norm…, is clearly an impairment…. *In addition*, a person with obesity

---

[7]     Available       at:               https://www.who.int/news-room/fact-sheets/detail/obesity-and-overweight#:~:text=Key%20facts,years%20and%20older)%20were%20overweight (accessed Sept. 16, 2024).

[8] Available at:  https://asmbs.org/patients/disease-of-obesity/ (accessed Sept. 16, 2024).

[9] Available at:  https://www.ncbi.nlm.nih.gov/pmc/articles/PMC4386197 (accessed Sept. 16, 2024).

may have an underlying or resultant physiological disorder[.]") (citing *Cook* and The Merck Manual of Diagnosis and Therapy 981 (Robert Berkow ed., 16th ed. 1992)) (emphasis added). Here, Plaintiff has been diagnosed with obesity—a disease, not simply a state of being overweight—and been prescribed medical treatment for the disease in the form of prescription medications. She has an impairment.

Under First Circuit precedent, Cigna's argument that obesity can only be an impairment if it is caused by a separate physiological disorder fails. Its out-of-jurisdiction cases are irrelevant. (*See* Def. Br. at 7–8.)[10] Cigna ignores: (1) the firmly established medical evidence that obesity is a physiological disorder; (2) *Cook,* EEOC guidance, and other decisions around the country. *See, e.g., Taylor v. Burlington N. R.R. Holdings, Inc.,* 193 Wash.2d 611, 444 P.3d 606 (2019); *BNSF Ry. Co. v. Feit*, 365 Mont. 359, 281 P.3d 225 (2012) (under similar state antidiscrimination law, obesity is a physiological impairment); and (3) the obligation to interpret "disability" under the *ACA* in light of its purpose of ensuring broad coverage for people previously shut out of health coverage due to discriminatory benefit designs. *King v. Burwell*, 576 U.S. 473, 492-493 (2015).

Nor are Cigna's citations to a handful of district court opinions in the First Circuit persuasive, when other district courts in this circuit have closely followed *Cook. See, e.g., Mendez,* 311 F. Supp. 2d at 141; *Nedder,* 908 F. Supp. at 74–75. Indeed, some cases Cigna cites wholly misread EEOC guidance. For example, *López-Santiago v. Med Centro, Inc.,* No. 23-cv-1206-PAD, 2023 WL 8809479, at *3 (D.P.R. Dec. 20, 2023), mistakenly found that the EEOC's guidance required both a characteristic outside the norm *and* a physiological disorder. That is:

> The guidance explains that the term "impairment" excludes physical characteristics such as weight that "[(1)] are within 'normal' range *and* [(2)] are not the result of a

---

[10] Citing *Morriss v. BNSF Ry. Co.*, 817 F.3d 1104 (8th Cir. 2016); *Andrews v. Ohio*, 104 F.3d 803 (6th Cir. 1997); *Francis v. Meriden*, 129 F.3d 281 (2d Cir. 1997); *Richardson v. Chicago Transit Auth.*, 926 F.3d 881 (7th Cir. 2019). ***None of these cases consider whether obesity is a disability under the ACA****.*

physiological disorder." 29 C.F.R. pt. 1630, app. §1630.2(h) (emphasis added).
Because the two criteria in the passage are joined by the word "and," a person's
weight is *not* an impairment only if both criteria are satisfied. By contrast, if either
criterion is not satisfied, weight may be an impairment…. Accordingly, where, as
here, an individual is morbidly obese, his weight is plainly not within the normal
range, and the guidance does not require him to make an additional showing that
his morbid obesity was caused by a "physiological disorder."

*Valtierra v. Medtronic, Inc.*, No. 17-15282, Brief of EEOC as Amicus Curiae, 2018 WL 6011412,

at *15 (9th Cir. Nov. 13, 2018). Other circuits followed this flawed reading. (*See supra* n.10.)[11]

But no *second* physiological condition need exist for obesity to be an impairment.

### B.  Plaintiff's Obesity Substantially Limits Her Major Life Activities.

Plaintiff has alleged that obesity impacts her walking, standing, and sleeping. (Compl.

¶102), *see* 42 U.S.C. §12102(2)(A). Cigna does not dispute these are major life activities and,

instead, focuses on whether obesity significantly limits those activities. It does.

### 1.  "Substantially Limits" is Evaluated Under a Lenient Standard.

In 2008, Congress broadened the definition of "disability" and "substantially limits." *See*

*Garcia-Hicks v. Vocational Rehab. Admin.*, 148 F. Supp. 3d 157, 164 (D.P.R. 2015) (explaining

that *Ramos-Echevarria v. Pichis, Inc.,* 659 F.3d 182 (1st Cir. 2011) and *Carreras v. Sajo, Garcia*

*& Partners,* 596 F.3d 25 (1st Cir. 2010)—both cited by Cigna[12]—applied "the language of the pre-

Amendment ADA along with its accompanying interpretations in EEOC" because "the events

giving rise to the litigation in these cases occurred prior to [the Amendment's] effective date.").

---

[11] *McCarthy v. Mass. Gen. Brigham Inc.* also does not help Cigna, which misleadingly cites that case as holding that "obesity does not qualify as a physical impairment… unless it is caused by an underlying physiological disorder…." (Def. Br. at 10 (citing No. 24-cv-10184-DJC, 2024 WL 3416025, at *3 (D. Mass. July 15, 2024).) There, the disability was "partial numbness of the tongue." *Id.* at *2. *McCarthy* went on to rely upon the Eighth Circuit's opinion in *Morriss* to hold partial tongue numbness is not an impairment "where there is no underlying disorder or condition alleged." *Id.* at *3. At best, *McCarthy* is cabined to the symptom at issue there, not diagnosed obesity.

[12] (Def. Br. at 10, 12.) So, too, with *Griffin v. United Parcel Serv., Inc.*, 661 F.3d 216 (5th Cir. 2011). Further, *Griffin* relied upon *Sutton v. United Air Lines, Inc.*, 527 U.S. 471 (1999), and its progeny. 661 F.3d 216. *Sutton's* strict standard was overturned by the Amended ADA. *Garcia-Hicks*, 148 F. Supp. 3d at 165 (citation omitted). Regardless, Plaintiff does not argue that obesity is a *per se* disability.

"[S]ubstantially limits' is not intended to be a demanding standard and should not engender extensive analysis beyond comparing the plaintiff's limitations to those of the majority of people in the general population." *Johnson v. Whole Foods Mkt. Grp., Inc.*, 657 F. Supp. 3d 158, 175–76 (D. Me. 2023) (internal quotations omitted); 29 C.F.R. §1630.2(j)(1)(ii). Cigna ignores this significant change in the law.

### 2. Obesity Is Substantially Limiting When It Requires Prescription Medicine.

When a medical professional diagnoses obesity and prescribes medically necessary drugs to treat it, the condition has reached the point of substantially limiting major life activities. (Compl. ¶¶35–52.) *Shine v. N.Y.C. Hous. Auth.*, No. 19-cv-04347-RA, 2020 WL 5604048 (S.D.N.Y. Sept. 18., 2020), cited by Cigna, is instructive. There, a mother alleged disability discrimination on behalf of herself and her child. She alleged she had difficulty breathing, which the court held did not establish a substantial limitation. *Id.* at *7. She also alleged that her child's breathing difficulty was "severe enough that he requires use of an asthma machine[.]" *Id.* The court held that was sufficient to allege a substantial limitation to the major life activity of breathing. *Id.* In other words, where a certain impairment is so severe as to require medical treatment, it rises to the level of substantially limiting a major life activity. *See Arroyo-Ruiz v. Triple-S Mgmt. Grp.,* 206 F. Supp. 3d 701, 713–14 (D.P.R. 2016).

So, too, with obesity, which causes fat cells to enlarge or increase, and those "cells and ectopic fat produce and secrete a variety of metabolic, hormonal and inflammatory products that produce damage in organs such as the arteries, heart, liver, muscle and pancreas." Bray, *supra* n.4. Each of these bodily functions is a "major life activity." 42 U.S.C. §12102(2)(B). As such, Plaintiff alleges "obesity substantially limits major bodily functions, including an individual's endocrine, musculoskeletal, respiratory and cardiovascular systems. This is true for all individuals…

diagnosed with obesity and whose physicians recommend treatment with prescription medication." (Compl. ¶102.)

Moreover, a "diagnosis of obesity is reached **after** a diagnosing provider considers the clinical effects of BMI on a patient's health via a medical history and physical examination. The clinical review considers the patient's risk for obesity, history of weight trajectory, and impact of the patient's weight on their health status, quality of life and functionality." (*Id.* ¶51 (emphasis added).) The reasonable inference is that, where someone with diagnosed obesity is prescribed a medically necessary drug for treatment, the impact of obesity has been determined to be substantially limiting. *See, e.g., Cavanagh v. IDEXX Lab'ys, Inc.*, No. 2:23-cv-00273-NT, 2024 WL 2724195, at *7 (D. Me. May 28, 2024) ("While she does not identify what major life activities this mental impairment substantially limits…, I can reasonably infer that PTSD and depression qualify as disabilities[.]") (internal quotations omitted); *Arroyo-Ruiz,* 206 F. Supp. 3d at 713–14.

Plaintiff also alleges that "[p]eople diagnosed with obesity experience substantial limitation of their ability to perform major bodily functions when compared to the majority of people in the general population." (Compl. ¶47.) Indeed, a minority of people in the general population are diagnosed with obesity. *Adult Obesity Facts,* CDC (May 14, 2024).[13] Only "[a]bout 1.7% of people in the US [were] prescribed a semaglutide medication in 2023." *Prescriptions for Popular Diabetes and Weight-Loss Drugs…,* CNN (Sept. 27, 2023).[14, 15]

---

[13] Available at: https://www.cdc.gov/obesity/php/data-research/adult-obesity-facts.html (accessed Sept. 22, 2024).

[14] Available at: https://www.cnn.com/2023/09/27/health/semaglutide-equitable-access/index.html (accessed Sept. 16, 2024). The court may take judicial notice of these articles. *James D. Julia, Inc. v. Dan Morphy Auctions, LLC*, No. 1:21-cv-00025-JAW, 2021 WL 2535941, at *7 (D. Me. June 21, 2021); *see, e.g., Hussey v. City of Cambridge*, No. 21-cv-11868-AK, 2022 WL 6820717, at *3 (D. Mass. Oct. 11, 2022) (taking judicial notice of news articles).

[15] Cigna claims that Plaintiff cannot state a claim on behalf of all people with obesity. (Def. Br. at 12–13 (citing *Smith v. Walgreens Boots All., Inc.,* No. 20-cv-05451-CRB, 2021 WL 3861451 (N.D. Cal. Aug. 30, 2021)

### 3. Plaintiff Alleges Obesity Substantially Limits Her Major Life Activities.

Given the foregoing, obesity substantially limits major life activities when it reaches the point of requiring medical intervention through prescribed medication. That is Ms. Whittemore's situation. She has diagnosed obesity (typically a BMI over 30). (Compl. ¶¶98, 100.) Her physician determined that she requires prescription medication to treat her obesity. (*Id.* ¶¶98, 100, 104–109.) She has alleged that obesity substantially limits her major life activities of walking, standing, and sleeping. (*Id.* ¶102.) She has also alleged that her own "ability to perform these major life activities is substantially limited when compared to most people in the general population." (*Id.* ¶103.)

Cigna disingenuously claims that the Complaint lacks specificity, implying by citing *López-Santiago* that Ms. Whittemore failed to plead her height or weight. (Def. Br. at 13.) Cigna has that information from Ms. Whittemore's administrative appeal, which included relevant medical records as evidence of her diagnosis with "severe obesity," and which is referenced in the Complaint as Exhibit 6. (ECF No. 1-6, citing medical records.) And Cigna's Drug and Biologic Policy establishes coverage criteria for semaglutide medication based on BMI, a function of height and weight. (ECF No. 1-1.) Thus, enrollees prescribed these medications to treat diagnosed obesity must submit their BMI to Cigna with their claim for coverage. This is a red herring.

Cigna also claims Ms. Whittemore does not allege the frequency of her symptoms. (Def. Br. at 13 (citing *Davis v. New York*, No. 1:23-cv-00116-JLS-JJM, 2023 WL 10351576, at *4 (W.D.N.Y. Dec. 20, 2023).) Untrue. **Ms. Whittemore's obesity is chronic.** (Compl. ¶24.) It impairs her life constantly and will continue to without treatment. (*Id.*, ¶¶35, 48, 53 ("Evolving research

---

("*Walgreens I*").) But the Court need not decide that issue to resolve the motion to dismiss. Cigna has not moved to strike class allegations and, even if it did, such motions are disfavored at the pleadings stage. *See Provencher v. Bimbo Bakeries USA, Inc,* No. 2:22-cv-198, 2023 WL 6050398, at *1 (D. Vt. Aug. 7, 2023). In any event, Plaintiff does not seek to represent everyone with obesity, and in *Walgreens I*, the complaint provided "no specific reasons why it is plausible that persons with prescriptions [are] disabled," unlike the Complaint here. 2021 WL 3861451, at *8.

on obesity reveals that it is a chronic… disease."), 104, 118.) Again, Cigna's policies reference the chronic nature of obesity. (ECF Nos. 1-1, 1-2.) *See also* Bray, *supra* n.4.

This is more than sufficient to allege that obesity substantially limited one or more of Ms. Whittemore's major life activities. *See, e.g., Cavanagh*, 2024 WL 2724195, at *7; *Arroyo-Ruiz*, 206 F. Supp. 3d at 713–14; *Johnson*, 657 F. Supp. 3d at 176 (denying defendant's motion for **summary judgment** where plaintiff's accommodation form listed limitations in "communicating, concentrating, interacting with others, sleeping, and thinking" and operation of "Brain and Digestive."); *Kane v. VSI Meter Servs., Inc.*, 723 F. Supp. 2d 268, 272 (D. Me. 2010) ("It is reasonable to infer… that incomplete recovery from a heart attack and a quadruple… bypass… would substantially limit the plaintiff's ability to work.") (internal quotations omitted); *Franchi v. New Hampton Sch.*, 656 F. Supp. 2d 252, 258–59 (D.N.H. 2009); *see, e.g., Mendez*, 311 F. Supp. 2d at 141–42. Should this Court disagree, Ms. Whittemore respectfully requests leave to amend. *See, e.g., Friends of Merrymeeting Bay v. NextEra Energy Res. LLC*, No. 2:11-cv-38-GZS, 2011 WL 4025508, at *1 (D. Me. Sept. 9, 2011).

## II.    Plaintiff States Claims for Discrimination.

### A.    Plaintiff States a Claim For Intentional Discrimination.

Intentional discrimination, also known as "disparate treatment," occurs when someone is treated less favorably than others because of a protected trait. *See Frith v. Whole Foods Mkt., Inc.*, 38 F.4th 263, 270 (1st Cir. 2022). Disparate treatment can result from a facially discriminatory policy. *CRC Health Grp., Inc. v. Town of Warren*, No. 2:11-cv-196-DBH, 2014 WL 2444435, at *8 (D. Me. Apr. 1, 2014). Facial discrimination is "by its very terms intentional discrimination." *Id.* at *11 (internal quotations omitted). Put another way, a "policy that expressly treats a protected class differently from others evinces discriminatory intent, precluding the need for further inquiry into [ ] motive." *Palmquist v. Shinseki*, 808 F. Supp. 2d 322, 340 (D. Me. 2011).

Cigna expressly excludes treatment for obesity: "Payment… is specifically excluded…[f]or medical and surgical services intended primarily for the treatment or control of obesity." (ECF No. 1-3 at 59–60.) Those with obesity cannot access prescription medications to treat their condition but other enrollees can. That is facial discrimination. *See, e.g.,* 81 Fed. Reg. 31429 (generally covering surgery while excluding it for those with disabilities is discrimination). "[F]acial discrimination does not depend on why the [defendant] discriminates but rather on the explicit terms of the discriminat[ory policy]." *Int'l Union v. Johnson Controls*, 499 U.S. 187, 199 (1991). When an insurer "design[s] its plan benefits in a discriminatory way[, that] inherently involves intentional conduct." *Schmitt I,* 965 F.3d at 954–55; *Mark H. v. Lemahieu*, 513 F.3d 922, 936 (9th Cir. 2008) ("To 'design' something…. involves some measure of intentionality").

Cigna argues that Plaintiff must allege something more to state a claim for damages based on intentional discrimination. (Def. Br. at 14.) Not so. *See Palmquist*, 808 F. Supp. 2d at 340 ("***Absent*** such a facially discriminatory policy, the plaintiff is not excused from proving discriminatory intent.") (emphasis added). Even if Plaintiff was required to allege "deliberate indifference," i.e., that Cigna knew that harm to a federally protected right was substantially likely and failed to act upon that likelihood, the Complaint would survive because facial discrimination ***is*** deliberately indifferent. *See, e.g., Hope v. City of Long Beach*, No. 04-cv-4249-DT-RZX, 2005 WL 6009954, at *8 (C.D. Cal. Aug. 15, 2005). Regardless, Plaintiff alleges Cigna:  acted with deliberate indifference when it designed and administered the Plan to exclude coverage of medication whenever sought to treat obesity; considers the medications medically necessary and includes them on its Prescription Drug List but refuses cover them when used to treat obesity; historically excluded medications to treat obesity; "failed to reexamine its health plans' historic exclusion… when the ACA's anti-discrimination laws took effect [and that such] 'thoughtless

15

indifference' or 'benign neglect' [ ] is a form of discriminatory prejudice;" "has never evaluated whether the Obesity Exclusion was based on medical and scientific evidence;" "did not engage in a 'cost-benefit' analysis" to decide whether to cover the medications; and "deliberately designed and administered the Exclusion to ensure that… prescription medications for the treatment of obesity needed by disabled enrollees diagnosed with obesity would not be covered." (Compl. ¶¶5, 16, 22–23, 25, 62, 68–74, 79, 80, 84.)[16] This is enough to plead deliberate indifference. *See, e.g., E.S. v. Regence BlueShield*, No. 17-cv-01609-RAJ, 2024 WL 1173805, at *4 (W.D. Wash. Mar. 19, 2024) ("*Regence II*") ("Regence did not undertake [an effort to comply] when the ACA was first implemented…. These allegations suggest discriminatory intent.") (internal quotations omitted). Further, deliberate indifference is a fact-bound inquiry. *See, e.g., Smith v. Maine Sch. Admin. Dist. No. 6*, No. 00-284-P-C, 2001 WL 420361, at *6–7 (D. Me. Apr. 24, 2001).

### B.    Plaintiff States a Claim for Proxy Discrimination.

"Proxy discrimination is a form of facial discrimination." *Pac. Shores Prop., LLC v. City of Newport Beach*, 730 F.3d 1142, 1160, n.23 (9th Cir. 2013). "It arises when the defendant… treats individuals differently [based on] seemingly neutral criteria that are so closely associated with the disfavored group that discrimination [based on] such criteria is, constructively, facial discrimination against the disfavored group." *Id.* The question is if the proxy's "fit" is "sufficiently close" to the protected trait to plausibly infer discrimination. *Fuog v. CVS Pharmacy, Inc.*, No. 20-cv-337-WES, 2022 WL 1473707, at *5 (D.R.I. May 10, 2022) (quoting *Schmitt I*, 965 F.3d at 959).

While the Obesity Exclusion is facial discrimination, the secondary "weight loss exclusion" is a form of proxy discrimination because, while facially neutral, there is a strong

---

[16] These allegations belie Cigna's claim that the allegations in *Walgreens* "were much more robust" than those here. (Def. Br. at 15.) Cigna's other cited cases simply state that conclusory allegations will not suffice. *Dunn v. City of Los Angeles*, No. 14-cv-8327-CBM-MRW, 2017 WL 7726724 (C.D. Cal. Aug. 10, 2017); *Cardigan Mountain Sch. v. N.H. Ins. Co.*, 787 F.3d 82 (1st Cir. 2015). They have no further relevance here.

correlation between disability and those denied under the weight loss exclusion who would have otherwise been entitled to coverage under Cigna's medical policy. (*Id.* ¶¶88–90.) In other words, "but for" the "weight loss exclusion," enrollees diagnosed with obesity (BMI over 30) would have coverage under Cigna's medical policy.[17] Thus, as alleged by Plaintiff, the "weight loss exclusion" "predominantly affect[s] disabled persons"—those diagnosed with obesity. *Schmitt I,,* 965 F.3d at 959, n.8. At this stage in the litigation, it is sufficient to allege that the class of enrollees impacted by the "weight loss exclusion," while "not a perfect correlation with disability," is close enough to plausibly infer proxy discrimination, like wheelchairs for mobility disabilities, service dogs for visual disabilities and gray hair for old age. *Fuog,* 2022 WL 1473707 at *14.

### 1.   Plaintiff Need Not Prove Proxy Discrimination Using Statistics.

Cigna argues that Plaintiff must allege statistics or studies showing the disproportionate effect of the exclusions on people with obesity. Not true. *See, e.g., Davis v. Commonwealth Election Comm'n*, 844 F.3d 1087 (9th Cir. 2016); *see also Tirrell v. Edelblut*, No. 24-cv-251-LM-TSM, 2024 WL 4132435, at *8 (D.N.H. Sept. 10, 2024). *Regence*, *Schmitt*, and *Fuog* do not say otherwise. *E.S. v. Regence BlueShield,* No. 2:17-cv-01609-RAJ, 2022 WL 279028, at *25 (W.D. Wash. Jan. 31, 2022) ("[I]nsureds are not *required* to use statistics.") (emphasis in original); *Schmitt I,* 965 F.3d at 959, n.8 ("statistical accuracy" is not possible when statistics reside "exclusively" with the defendant). Moreover, "[t]he closeness of the fit is a fact-sensitive determination that will require reliable expert testimony." *Fuog,* 2022 WL 1473707, at *5; *see Regence II*, 2024 WL 1173805, at *2 (amended complaint stated a claim without statistics).

---

[17] Same for people with a BMI of 27-29 with a co-occurring condition. While Cigna makes great hay over the allegations that some people with BMIs over 30 may not be diagnosed with obesity and some people with BMIs under 30 may, that does not defeat proxy discrimination. "[H]aving a BMI of 30 is commonly associated with obesity," and BMI is an "inexpensive and efficient" screening tool, such that one could reasonably infer that obesity is routinely based on BMI. (Compl. ¶50.)

Here, Plaintiff alleges nearly all those who eligible for anti-obesity medications are (1) diagnosed obesity and (2) prescribed medications to treat obesity because it has impacted their daily life. (Compl. ¶¶85–90.) So, too, with *Schmitt*, where the plaintiffs ultimately alleged that if a person is so impaired as to need medical treatment, then they are disabled under the law. *Schmitt v. Kaiser Found. Health Plan of Wash.*, No. 17-c-1611-RSL, Pls' Opp. Br. at 12–15, ECF No. 75 (W.D. Wash. April 12, 2021); 2022 WL 20356061, at *1 (W.D. Wash. Aug. 4, 2022) ("*Schmitt II*") ("Plaintiffs have plausibly alleged that hearing loss is a viable proxy for hearing disability[.]"). If the policy is directed at a protected trait such that most of those **impacted** by the policy have the protected trait, then the "fit" is met. *Schmitt I,* 965 F.3d at 959.

### 2.   Plaintiff Has Plausibly Pled Proxy Discrimination.

Cigna argues that the proxy of "weight loss medications" is both over- and under-inclusive such that the "fit" is not "sufficiently close" enough for proxy discrimination. Again*,* wrong. That the "weight loss exclusion" may also impact some non-disabled individuals is irrelevant. "Overdiscrimination is prohibited." *Schmitt I,* 965 F.3d at 958, *citing Pac. Shores,* 730 F.3d at 1160; *see also Rice v. Cayetano*, 528 U.S. 495, 514 (2000). This is true even if many non-disabled individuals are impacted. *Pac. Shores*, 730 F.3d at 1159. At this stage, the precise manner in which the Obesity Exclusion affects non-disabled individuals need not be demonstrated by Plaintiff because that evidence is exclusively controlled by Cigna. *See Schmitt I,* 965 F.3d at 959, n.8.

Similarly, Cigna does not cure the alleged discrimination by offering some limited coverage for **surgical** treatment for obesity. *See Lovell v. Chandler*, 303 F.3d 1039, 1052 (9th Cir. 2002). That Cigna may treat some disabled enrollees without discrimination does not render the proxy "under-inclusive."  This is particularly true where, as alleged here, the alternative treatment offered by Cigna is more invasive, more expensive and less effective than treatment with prescription drugs. (Compl. ¶94.) In any event, Plaintiff alleges Cigna's bariatric surgery coverage

18

is significantly limited (Compl. ¶65), making it unreasonable to infer that surgery "serve[s] the needs of most individuals" with obesity.[18] *Schmitt I,* 965 F.3d at 959; *see, e.g., Bowers v. NCAA*, 563 F. Supp. 2d 508, 519 (D.N.J. 2008) (a proxy need not be all encompassing for the "fit" to work). Again, since the Obesity Exclusion and the weight loss exclusion target enrollees with obesity, a disability, the "fit" exists. *Schmitt I,* 965 F.3d at 959.

*Walgreens* is inapposite. There, the plaintiff alleged "that people with opioid prescriptions exceeding [dose-and-duration thresholds] are disabled and that the policy's dose-and-duration thresholds are a proxy[.]" *Smith v. Walgreens Boots All., Inc.*, No. 22-16468, 2024 WL 20063, at *2 (9th Cir. Jan. 2, 2024) ("*Walgreens II*").) But "none of the studies cited by [the plaintiff] mention a dose-and-duration threshold." *Id.* Moreover, the *Walgreens* plaintiff failed to allege that the exclusion targeted or disproportionately impacted people with disabilities. *Id.* Here, though, people with obesity, all disabled, would have coverage, ***but for*** the exclusion. (Compl. ¶¶85–90.)

### 3.     Additional Allegations Support Plaintiff's Proxy Discrimination Claim.

Plaintiff's allegations about the history, circumstance, and application of the exclusion also support proxy discrimination. *Id.* ¶¶61–65 (alleging a history of disability-based exclusions, including obesity), 66 (alleging failure to reconsider coverage when the ACA passed), 73 ("the Obesity Exclusion is not based upon clinical or medical evidence."), 74 ("[It] is targeted at excluding… treatment [for] obesity."). *See Regence II*, 2024 WL 1173805, at *3 (looking to similar allegations to assess fit) (quoting *Davis v. Guam*, 932 F.3d 822, 838 (9th Cir. 2019).

---

[18] Only ***one percent*** of patients who qualify for bariatric surgery actually undergo the treatment. *Am. Soc. for Metabolic and Bariatric Surgery,* April 2020, available at: https://www.soard.org/article/S1550-7289%2819%2931160-8/abstract (accessed Sept. 23, 2024).

### C.      Plaintiff States a Claim for Disparate Impact Discrimination.

Policies have a disparate impact when they are facially neutral, but "fall more harshly on one group than another[.]" *E.E.O.C. v. Steamship Clerks Union, Loc. 1066*, 48 F.3d 594, 601 (1st Cir. 1995) (internal quotations omitted). Here, the Obesity Exclusion disparately impacts enrollees with obesity. (Compl. ¶91.) They "do not receive prescription drug treatment for their health condition, [but] other enrollees have access to… medically necessary medications to treat their diagnosed health conditions." (*Id.* ¶92.) Further, "there is no appeal right for Cigna's denial of coverage for [obesity drugs], while all other… denials… generally have appeal rights." (*Id.* ¶95.)

Cigna argues that because the Plan does not cover anti-obesity medication for anyone, it does not treat people with obesity more harshly than non-disabled participants. But anti-discrimination law focuses on those "for whom the law is a restriction, not the group for whom the law is irrelevant." *City of Los Angeles, Calif. v. Patel*, 576 U.S. 409, 418 (2015); *see also Kadel v. Folwell*, 100 F.4th 122, 147 (4th Cir. 2024) (rejecting argument that there was no discrimination because gender affirming treatment was not covered for transgender or cisgender people). And contrary to Cigna's argument, "statistics are not strictly necessary…. This is particularly true where a disparate impact is obvious." *Bolden-Hardge v. Off. of Cal. State Controller*, 63 F.4th 1215, 1227 (9th Cir. 2023) (internal citations omitted). Here, the impact is obvious:  Failing to cover anti-obesity medication will impact people with obesity more harshly than those without. *See also Lynch v. Freeman*, 817 F.2d 380, 387 (6th Cir. 1987). At any rate, questions over the degree of impact should be resolved after discovery. *See* 81 Fed. Reg. 31405.

## <u>CONCLUSION</u>

Plaintiff's allegations are sufficient at this stage. Cigna's Motion to Dismiss should be denied.

DATED:  September 26, 2024          **SOLIDARITY LAW, PLLC**

*/s/ Jeffrey Neil Young*
Jeffrey Neil Young (ME Bar #3874)
Margaret O'Neil (ME Bar #10705)
jyoung@solidaritylaw.com
moneil@solidaritylaw.com
9 Longmeadow Road
Cumberland Foreside, Maine 04110
Tel. (207) 844-4243

**SIRIANNI YOUTZ
SPOONEMORE HAMBURGER PLLC**
Eleanor Hamburger (WSBA #26478)*
Richard E. Spoonemore (WSBA #21833)*
ehamburger@sylaw.com
rspoonemore@sylaw.com
3101 Western Avenue, Suite 350
Seattle, WA 98121
Tel. (206) 223-0303; Fax (206) 223-0246
* Admitted *pro hac vice*

**NICHOLS KASTER, PLLP**
Paul J. Lukas (MN Bar No. 022084X)*
Anna P. Prakash (MN Bar No. 0351362)*
lukas@nka.com
aprakash@nka.com
4700 IDS Center
80 South 8th Street
Minneapolis, MN 55402
Tel. (612) 256-3200; Fax: (612) 338-4878
* Admitted *pro hac vice*

ATTORNEYS FOR PLAINTIFF JAMIE WHITTEMORE
AND THE PROPOSED CLASSES

## CERTIFICATE OF SERVICE

I, hereby certify that on September 26, 2024, I electronically filed the foregoing document with the Clerk of Court using the Court's CM/ECF system, which will send notice of the filing to counsel of record.

*/s/ Jeffrey Neil Young*
Jeffrey Neil Young